Docket No. 97062–Agenda 8–September 2004.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN W. CORNELIUS, Appellee.

Opinion filed December 2, 2004.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

Defendant, John Wayne Cornelius, was charged by indictment in the circuit court of Champaign County with one count of unlawful failure to register as a sex offender in the City of Champaign, within 10 days of establishing residence there, in violation of section 3(b) of the Sex Offender Registration Act (Registration Act) (730 ILCS 150/3(b) (West 2002)). Defendant filed a motion to dismiss the charge, arguing that the Registration Act, as well as the Sex Offender and Child Murderer Community Notification Law (Notification Law) (730 ILCS 152/101 
et seq.
 (West 2002)), violated several provisions of the United States Constitution and the Illinois Constitution of 1970. The circuit court granted defendant’s dismissal motion. For the reasons that follow, we reverse the judgment of the circuit court, and remand this cause for further proceedings.

BACKGROUND

The Sex Offender Registration Act and the Sex Offender and Child Murderer Notification Law operate in tandem, providing a comprehensive scheme for the registration of Illinois sex offenders and the dissemination of information about these offenders to the public. 
People v. Malchow
, 193 Ill. 2d 413, 416 (2000).

The Registration Act requires that all sex offenders, as defined in section 2 of that act (730 ILCS 150/2 (West 2002)), shall register in person with municipal or county law enforcement officials within 10 days of establishing a residence in that municipality or county. 730 ILCS 150/3(a)(1), (a)(2), (b) (West 2002). Pursuant to the Registration Act, an offender must provide a written, signed statement which includes the registrant’s current address and current place of employment. In addition, the offender must submit a photograph. The Registration Act further provides that the registry information may also include the offender’s fingerprints. 730 ILCS 150/3(c)(6), 8 (West 2002). Finally, the registration information must also include whether the person is a sex offender as defined in section 105 (730 ILCS 152/105 (West 2002)) of the Notification Law. 730 ILCS 150/8 (West 2002). The registering law enforcement agency shall enter the information into the Law Enforcement Agencies Data System (LEADS). 730 ILCS 50/8 (West 2002).

The Registration Act further requires that, in making this registration, the offender must provide “positive identification and documentation that substantiates proof of residence at the registering address.” 730 ILCS 150/3(c)(5) (West 2002). A registrant who changes his address must inform the law enforcement agency with which he last registered within 10 days of the change, and he must register anew with the appropriate local law enforcement agency having jurisdiction over his new residence, also within a 10-day period. 730 ILCS 150/6 (West 2002). Failure to comply with the registration requirements of this act is a Class 4 felony. 730 ILCS 150/10 (West 2002).

An offender who is subject to Registration Law is, in turn, also subject to the provisions of the Notification Law. The Notification Law provides that at the time a sex offender registers under section 3 of the Registration Act, or reports a change of address under section 6 of that Act, “the offender shall notify the law enforcement agency having jurisdiction with whom the offender registers or reports a change of address *** that the offender is a sex offender.” 730 ILCS 152/110 (West 2002). The Notification Law requires the Illinois State Police to maintain a Statewide Sex Offender Database “for the purpose of identifying sex offenders and making that information available” to those individuals specified in the Notification Law. 730 ILCS 152/115(a) (West 2002). The information contained in this database–which includes the name, address, date of birth, place of employment, school attended and offense or adjudication of all sex offenders required to register under section 3 of the Registration Act–must be disclosed to entities such as school boards, school principals, and child care facilities in the county where the offender is required to register, resides, is employed, or is attending an institution of higher education. 730 ILCS 152/120 (West 2002). The State Police, in its discretion, may also disclose this information to any person “likely to encounter a sex offender.” 730 ILCS 152/120(b) (West 2002). Local law enforcement authorities must make the registry information available and “open to inspection by the public” in accordance with procedures set forth in the Notification Law. 730 ILCS 152/120(c) (West 2002).

On July 1, 2000, section 115 of the Notification Law was amended by adding a new subsection (b), which requires that the Illinois State Police make the information contained in the Statewide Sex Offender Database accessible to the general public by means of the Internet. 730 ILCS 152/115(b) (West 2002). Specifically, section 115(b) provides:

“(b) The Department of State Police must make the information contained in the Statewide Sex Offender Database accessible on the Internet by means of a hyperlink labeled ‘Sex Offender Information’ on the Department’s World Wide Web home page. The Department of State Police must update that information as it deems necessary.”

It is against this background that defendant was arrested on April 18, 2002. At the time of his arrest, defendant lived in an apartment building in the City of Champaign and had resided at that location since July 2001. The landlord of the building called police after several female tenants complained that defendant had engaged in peculiar and disturbing behavior, including roaming the hallways at night while moaning, peeping at them from his windows, and making strange noises.

When the police responded, they ran defendant’s name through the LEADS system. LEADS indicated that defendant had been convicted in 1992 for aggravated criminal sexual abuse. Accordingly, because a conviction for aggravated criminal sexual abuse classified defendant as a “sex offender” pursuant to section 2 of the Registration Act (730 ILCS 150/2(B)(1) (West 2002)), defendant was required to comply with the Act’s registration requirements. At the time of his 1992 conviction, defendant was registered at an address in Rantoul, Illinois. However, the Champaign officers discovered that, at the time of his arrest, defendant was not in compliance with the provisions of the Registration Act, as he had failed to notify the authorities that he had moved to Champaign.

Defendant was subsequently indicted by a Champaign County grand jury for unlawful failure to register as a sex offender, in violation of section 3 of the Registration Act. The provision under which defendant was charged specifically provides as follows:

“Any sex offender, regardless of any initial, prior or other registration, shall, within 10 days of establishing a residence, place of employment, or temporary domicile for more than 10 days in any county, register in person as set forth in subsection (a)(1), (a)(2) or (a–5).” 730 ILCS 150/3(b) (West 2000).

In addition to the registration requirements set forth in section 3 of the Registration Act, defendant was also subject to the similar registration requirement found in section 110 of the Notification Law (730 ILCS 152/110 (West 2002)), as well as the provision requiring that his sex offender registry information be available on the State Police Internet site pursuant to section 115(b) of the Notification Law. 730 ILCS 152/115(b) (West 2002).

On July 31, 2002, defendant moved to dismiss the charge. According to defendant’s motion to dismiss, “the Illinois Sex Offender Registration Act (730 ILCS 150/1 
et seq.
 (West 2002)) and its companion Sex Offender and Child Murderer Community Notification Law (730 ILCS 152/101 
et seq
. (West 2002)) are in violation of the United States and Illinois Constitutions as they violate the defendant’s Due Process rights and constitute unconstitutional punishment in violation of the Ex Post Facto clause of the United States and Illinois Constitutions and are in violation of the right to privacy guaranteed by the Illinois constitution.” Defendant further asserted in his dismissal motion that both the Registration Act and the Notification Law were unconstitutional because they violated the prohibition against double jeopardy in the Illinois and United States constitutions; they violated the equal protection provisions in the Illinois and United States constitutions; and they violated the right to privacy implied in the United States Constitution.

In his motion to dismiss, defendant acknowledged that this court, in our prior decision in 
People v. Malchow
, 193 Ill. 2d 413 (2000), held that section 3 of the Registration Act and section 110 of the Notification Law did not violate the federal and state constitutions. Defendant asserted, however, that subsequent to our decision in 
Malchow
, the General Assembly added the new subsection (b) to section 115 of the Notification Law, which requires the Illinois State Police to publish information about a sex offender and his or her photograph on its Internet site. According to defendant, the addition of subsection (b) to section 115 of the Notification Law raised new 
ex post facto
, privacy, due process, and double jeopardy concerns not addressed by this court in the 
Malchow 
decision. Defendant further distinguished 
Malchow
 on the basis that 
Malchow
 did not discuss the general due process implications of the Registration Act and Notification Law and only “briefly discussed” whether those provisions impermissibly infringed on the defendant’s privacy rights. In his motion, defendant stressed that he was not challenging, on privacy grounds, the requirement that he register under the Registration Act; defendant’s challenge was limited to section 115(b) of the Notification Law, which requires that his sex-offender data be made available on the Internet. According to defendant, the “wholesale dissemination by the State of his private information on its World Wide Web site violates his right to privacy.”

In addition, defendant asserted in his motion to dismiss that two then-recent decisions rendered by the United States Court of Appeals “mandate[d]” a finding that both the Registration Act and the Notification Law were unconstitutional. In 
Doe v. Department of Public Safety
, 271 F.3d 38 (2d Cir. 2001), 
rev’d
, 538 U.S. 1, 155 L. Ed. 2d 98, 123
 
S. Ct. 1160 (2003), the Second Circuit Court of Appeals held that a Connecticut sex offender registration law violated procedural due process when it failed to provide persons on the state sex offender registry an opportunity to avoid being listed on the registry by proving they were not currently dangerous to the public. In 
Doe v. Otte
, 259 F.3d 979 (9th Cir. 2001), 
rev’d
, 538 U.S. 84, 155 L. Ed. 2d 164, 123 S. Ct. 1140 (2003), the Ninth Circuit Court of Appeals held that because the effects of the Alaska sex offender registration and notification law were punitive, that scheme violated the 
ex post facto clause.

On August 11, 2003, defendant filed a supplemental memorandum in support of his motion to dismiss. In this pleading, defendant noted that the United States Supreme Court had recently decided 
Connecticut Department of Public Safety v. Doe
, 538 U.S. 1, 155 L. Ed. 2d 98, 123 S. Ct. 1160 (2003), wherein the Court reversed the Second Circuit Court of Appeals’ decision in 
Doe v. Department of Public Safety
, which held that the public disclosure of the Connecticut sex offender registry violated the due process clause. In his supplemental memorandum, defendant attempted to factually distinguish his case from that of 
Doe
. Whereas in 
Doe
 the defendant asserted that his right to procedural due process had been violated by the statutory provisions, in the matter at bar defendant stressed that the Registration Act and Notification Law violated his constitutional right to substantive due process.

On September 3, 2003, the circuit court conducted a hearing on defendant’s motion to dismiss the charge. Defendant and the State were each represented by counsel, who briefly presented arguments to the circuit court. The transcript of this hearing, which consists of 15 pages, reveals that defense counsel focused his brief argument upon the substantive due process and privacy challenges to the statutes and did not mention the numerous other constitutional challenges to the statutes set forth in his written motion to dismiss.

At the conclusion of argument, the trial court judge made an oral ruling, granting defendant’s motion to dismiss the charge. The entirety of that oral ruling is as follows:

“THE COURT: Counsel, this is an interesting issue. I think as I have indicated on more than one occasion, the Illinois Supreme Court [in 
Malchow
] was rather specific and detailed in their analysis of the old statute, and they base their decision on the limited dissemination of that information. The fact that the new statute mandates putting this information on the Web, which makes it available to literally everyone in the world, is interesting, and quite frankly, troubling. Our Illinois constitution talks about the right to privacy. And I have to agree with [defense counsel], if you’re going to establish a law that allows this information to be so broadly disseminated, there has to be a purpose for it, and I believe the old law was appropriate and correct, and [defense counsel], I’m going to give you the opportunity, if the State wishes to appeal this, to argue your case before the Illinois Supreme Court. I’m going to grant the Motion to Dismiss.”

The record reveals that this is the only pronouncement made by the circuit court with respect to its grant of defendant’s motion to dismiss the charge. The record does not contain a written order entered by the circuit court with respect to this ruling.

The State timely made a direct appeal to this court. 134 Ill. 2d R. 603.

ANALYSIS

Although the circuit court did not explicitly declare the Registration Act and the Notification Law unconstitutional, a finding of unconstitutionality can be the only basis for granting dismissal of the charge against defendant. Accordingly, the circuit court’s judgment granting defendant’s motion to dismiss is before us on direct review. Because the constitutional validity of a statute is a question of law, we review 
de novo
 the circuit court’s decision declaring the statute unconstitutional. 
In re Parentage of John M.
, 212 Ill. 2d 253 (2004); 
Arvia v. Madigan
, 209 Ill. 2d 520, 536 (2004).

In the matter at bar, the circuit court, in a very brief oral ruling, granted defendant’s motion to dismiss the charge against him. In turn, defendant’s dismissal motion alleged numerous grounds upon which the Registration Act and the Notification Law violated both the United States and the Illinois Constitutions. Unfortunately, the circuit court failed to set forth the specific grounds upon which it granted defendant’s motion to dismiss. As we recently observed in 
In re Parentage of John M.
, “[o]ur task of reviewing the circuit court’s judgment in the case at bar is hampered by a lack of clarity in the court’s ruling.” 
In re Parentage of John M.
, 212 Ill. 2d at 266. It is with concern that we note that the instant cause is the second occasion in which we have recently been forced to discern the scope of a circuit court’s ruling declaring a statute to be unconstitutional. See 
In re Parentage of John M.
, 212 Ill. 2d 253 (2004). 

As in 
In re Parentage of John M.
, we are here faced with a circuit court ruling that is “conclusory and unsupported by any legal analysis or explanation.” 
In re Parentage of John M.
, 212 Ill. 2d at 266. When a circuit court does something as serious as holding that a statute violates the constitution, then the circuit court must also be mindful to clearly state what portion of the statute is unconstitutional as well as the legal basis for that ruling.

We remind our circuit courts that statutory enactments are presumed constitutional, and that it is the duty of the court to construe a statute so as to affirm its constitutionality, if such a construction is reasonably possible. 
Vuagniaux v. Department of Professional Regulation
, 208 Ill. 2d 173 (2003); 
Burger v. Lutheran General Hospital
, 198 Ill. 2d 21, 32 (2001). This presumption derives from the fact that when a circuit court declares a statute unconstitutional, such a holding destabilizes the area of law within which the statute is invalidated until that ruling is reviewed by this court. We have previously cautioned that circuit courts should “ ‘not *** compromise that stability in the first place by declaring legislation unconstitutional when the particular case does not require it.’ ” 
Hearne v. Illinois State Board of Education
, 185 Ill. 2d 443, 454 (1999), quoting 
Trent v. Winningham
, 172 Ill. 2d 420, 425 (1996). To that end, it is well settled that only where the party challenging the validity of the enactment has borne his or her burden to clearly establish a constitutional violation that a statute may be declared invalid. 
In re J.W.
, 204 Ill. 2d 50, 62 (2003); 
People ex rel. Sherman v. Cryns
, 203 Ill. 2d 264, 290 (2003). If a statute’s construction is doubtful, a court should resolve that doubt in favor of the statute’s validity. 
Miller v. Rosenberg
, 196 Ill. 2d 50, 57-58 (2001).

This is not to mean that statutes are unassailable; however, “neither should circuit courts lightly or cavalierly declare unconstitutional that which the representatives of the people have seen fit to enact.” 
People v. Conlan
, 189 Ill. 2d 286, 291-92 (2000). Accordingly, the best practice for our circuit courts when holding a statute unconstitutional is to state with specificity the statutory provision or provisions found to violate the constitution, the constitutional provision or provisions violated, and the legal basis supporting that determination.

Turning to the matter at bar, “our task, initially, is to define the parameters of the circuit court’s holdings.” 
In re Parentage of John M
, 212 Ill. 2d at 267. To this end, we must, therefore, look at the record as a whole and give the court’s statements their most logical meaning. We begin by examining the text of the circuit court’s oral ruling. The scope of the ruling is not readily apparent from the vague and general statements made by the circuit court judge in his one-paragraph pronouncement. We note that, in granting defendant’s motion, the circuit court judge spoke of the “new statute” challenged in this case and the “old statute” reviewed by this court in 
Malchow
. In addition, in the course of his ruling, the circuit court judge stated that the “new statute mandates putting this information on the Web.” Finally, we note that the circuit court judge mentioned, in the course of the ruling, that “[o]ur Illinois constitution talks about the right to privacy.”

 Because the circuit court makes reference to the “old” statute being the statute we reviewed in 
Malchow
 and the “new” statute as containing the Internet provision, we logically conclude that the circuit court intended by this ruling to find the recently added Internet provision of the Notification Law, found in section 115(b) (730 ILCS 152/115(b) (West 2002)), to be unconstitutional as an invasion of defendant’s right to privacy as guaranteed by article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §6). We believe this is a reasonable interpretation of the court’s order and is the only basis, apparent from the record, upon which the trial court granted defendant’s motion to dismiss.

After having determined that the circuit court granted defendant’s motion to dismiss on the basis that the Internet provision of the Notification Law, found in section 115(b) (730 ILCS 152/115(b) (West 2002)), impermissibly invades defendant’s right to privacy guaranteed by article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §6), we address the propriety of this specific ruling. Defendant, however, correctly notes in his brief to this court that our review of the circuit court’s judgment is not limited to that court’s reasoning, and we may uphold the circuit court’s ruling that the Notification Law and the Registration Act are unconstitutional on any basis in the record. “[A]s a reviewing court, we can sustain the decision of the circuit court on any grounds which are called for by the record regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court’s reasoning was correct.” 
Bell v. Louisville & Nashville R.R. Co.
, 106 Ill. 2d 135, 148 (1985). Accordingly, we will therefore also address the remainder of the constitutional challenges raised by defendant in his brief.

I. Privacy

We begin our analysis by reiterating that defendant, as the party challenging the validity of the statute, bears the burden of clearly establishing its unconstitutionality. 
In re Curtis B.
, 203 Ill. 2d 53, 58 (2002). In his brief to this court, defendant asserts that the Notification Law, and, by implication, the Registration Act, violates his right to privacy guaranteed by article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §6). Defendant emphasizes that it is not his position that the statutes violate his right to privacy by requiring that he register with local law enforcement authorities; rather, defendant asserts that it is the “wholesale dissemination” by the state of his photograph and physical attributes on its Internet page, pursuant to section 115(b) of the Notification Law, that violates his privacy rights.

According to defendant, prior to the addition of the Internet provision to the Notification Law, an individual interested in obtaining information from the sex offender registry either had to travel to the courthouse to view specific records on a specific person or to request by telephone or in writing information from the offender database maintained by the Illinois State Police. Defendant asserts that a much lower threshold of participation is involved when an individual sits at a computer in his or her home and conducts an Internet search for sex offender information. According to defendant, “It is a violation of [his] right to privacy to allow access to those records by persons whose only interest is curiosity or whose motives may be reprehensible.” Defendant contends that there is no correlation between the stated purpose of the Registration Act and the Notification Law in protecting the public from sex offenders and the dissemination of defendant’s registry information and his photograph on the World Wide Web. Defendant concludes that the “dissemination of the database information to the world at large through the Internet and the corresponding wholesale invasion of defendant’s right to privacy is not reasonable.”

 The State contends that defendant’s argument is flawed because it is based upon a faulty premise, namely, that defendant’s sex offender data is “private information.” The State notes that, even prior to the addition of the Internet provision to the Notification Law, defendant’s sex offender registry information was open to public inspection by any individual–whether an Illinois resident or not–who wished to obtain information about sex offenders in this state. Therefore, the State asserts, even under the traditional means of notification, defendant’s registration information was not “private.” According to the State, the addition of subsection (b) to section 115 of the Notification Law–which requires that defendant’s registry information also be available on the Internet–merely provides an additional avenue for public access to already public information. Thus, the State concludes, defendant has failed to meet his burden to clearly establish that section 115(b) of the Notification Law violates his right to privacy under the Illinois Constitution. We agree.

Article I, section 6, of the Illinois Constitution of 1970 provides: 

“The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized.” Ill. Const. 1970, art. I, §6.

The privacy protections guaranteed under the Illinois Constitution “go[ ] beyond federal constitutional guarantees by expressly recognizing a zone of personal privacy ***.” 
Kunkel v. Walton
, 179 Ill. 2d 519, 537 (1997). However, even under the expanded privacy protections afforded by the Illinois Constitution, it is well settled that the right to privacy is not absolute. Only 
unreasonable
 invasions of privacy are constitutionally forbidden. 
Burger
, 198 Ill. 2d at 51-52; 
Kunkel
, 179 Ill. 2d at 538; 
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 450 (1997).

Thus, our inquiry is twofold: we must first determine whether defendant has a reasonable privacy expectation in his sex offender registry information, and, if so, we must then decide whether the provisions of the Notification Law mandating that this information be available on the Internet unreasonably invades that privacy expectation.

The Registration Act was passed by the General Assembly “in response to concern over the proliferation of sex offenses against children.” 
People v. Adams
, 144 Ill. 2d 381, 386 (1991). By requiring sex offenders to register with local law enforcement agencies, “the legislature sought to create an additional method of protection for children from the increasing incidence of sexual assault and sexual abuse.” 
Adams
, 144 Ill. 2d at 387. The Registration Act was designed to aid law enforcement agencies in allowing them to “monitor the movements of the perpetrators by allowing ready access to crucial information.” 
Adams
, 144 Ill. 2d at 388. Similarly, the Notification Law, by disseminating the information gathered through the Registration Act, is intended to protect the public. 
Malchow
, 193 Ill. 2d at 420.

In 
Malchow
, we rejected various constitutional challenges to the prior version of the Notification Law, before its amendment by the addition of the Internet provisions contained in subsection (b) of section 115. Similar to defendant at bar, the defendant in 
Malchow
 asserted that the Registration Act and the Notification Law impermissibly infringed upon his right to privacy. However, because Malchow did not adequately develop his argument that he was denied his right to privacy under the Illinois Constitution, we concluded that he had not overcome the presumption of constitutionality and failed to meet his burden to clearly show that the statutory provisions were invalid. 
Malchow
, 193 Ill. 2d at 426.

In the matter before us, defendant asserts that the prior version of the law upheld in 
Malchow
, which provided the public with access to registry information only upon personal request to local law enforcement offices, was a preferable method of disseminating this information and did not violate privacy concerns. Defendant contends that because the Internet provides a faster, more convenient manner of obtaining sex offender information, this results in a far more extensive transmission of that information. According to defendant, because his sex offender data is now “available to anyone who has access to the Internet, be that person in Kansas, England or Illinois,” his right to privacy protected by the Illinois constitution is violated by this “wholesale dissemination” of personal information.
(footnote: 1)
 We find it significant that defendant embraces, rather than challenges, the traditional methods of public dissemination of sex offender information, and argues that such dissemination is preferable to listing this information on the State Police’s Internet site. Prior to the addition of the Internet provisions, the Notification Law required–and continues to require–that a sex offender’s name, address, date of birth, offense, photograph and employment information be “open to inspection by the public.” 730 ILCS 152/120(c) (West 2002). Accordingly, any individual who was “likely to encounter a sex offender” (730 ILCS 152/120(b) (West 2002)) could request registry information from the appropriate law enforcement agency “in person, in writing, or by telephone.” 730 ILCS 152/120(c) (West 2002). Thus, even before the addition of the Internet provision in subsection (b) of section 115 of the Notification Law, 
any
 person–whether an Illinois resident or not–averring that he or she was “likely to encounter a sex offender”–whether this likelihood was based upon legitimate concern, mere suspicion, or simple interest–could have requested defendant’s sex offender registry information by telephone, by mail, or in person, paid the required copying fees, and obtained the information.

We agree with the State that the Internet access to sex offender registry information authorized under section 115(b) of the Notification Law is “simply another manner of archiving, storing and disseminating the information–already available by numerous other means–to interested parties.” Criminal proceedings are open to the public, and “[w]hat transpires in the court room is public property. *** Those who see and hear what transpired can report it with impunity.” 
Craig v. Harney
, 331 U.S. 367, 374, 91 L. Ed. 1546, 1551, 67 S. Ct. 1249, 1254 (1947). In addition, the court’s file for each case is deemed to be a public record, and “shall at all times be open to inspection without fee or reward, and all persons shall have free access for inspection and examination to such records ***.” 705 ILCS 105/16(6) (West 2002). Thus, all information in defendant’s court file, including any personal information with respect to defendant, is available for inspection by anyone in the world. This leads us to conclude that defendant does not have a cognizable privacy interest in his sex offender registry information. Defendant “engaged in conduct that lowered the privacy bar *** [as] [h]is acts spawned a criminal prosecution culminating in a public record that contains the challenged information.” 
People v. Grochocki
, 343 Ill. App. 3d 664, 670 (2003) (upholding the Internet provision of the Notification Law against a privacy challenge). Accordingly, “defendant cannot argue that the compilation and dissemination of truthful information that is already, albeit less conveniently, a matter of public record constitutes a legitimate privacy interest.” 
People v. Logan
, 302 Ill. App. 3d 319, 
334 (1998) (sex offender registry information is a matter of public record and is not protected by privacy rights).

Thus, defendant’s argument that Internet access makes it too easy or convenient for the public to procure registry information misses the mark. The determinative fact is that the sex offender registry information is already open to the public and is a matter of public record. 
The Internet provides for a different kind of accessibility to information that is already publically available by other means. Thus, defendant’s registry information is not “private” and, accordingly, does not fall within the protections of the privacy clause of the Illinois Constitution.

It is for this reason that defendant’s heavy reliance upon our prior decision in 
In re May 1991 Will County Grand Jury
, 152 Ill. 2d 381 (1992), is misplaced. In that case, two men were subpoenaed by a Will County grand jury to appear in a lineup and submit hair samples. In addition, one man was ordered to submit a complete set of fingerprints and palmprints. No charges had been filed against either man. The men filed a motion to quash the subpoenas. In finding that the men had a viable privacy claim under the Illinois Constitution, we explained that:

“A person has a reasonable expectation that his private records will not be exposed to public view. Similarly, a person has a reasonable expectation that he will not be forced to submit to a close scrutiny of his personal characteristics, unless for a valid reason. We believe that the individual’s privacy interest in his physical person, as well as his privacy interest in his documents, must be protected.” 
In re May 1991 Will County Grand Jury
, 152 Ill. 2d at 391-92.

This court held that, under the specific circumstances presented in that case, the privacy protections guaranteed under the Illinois Constitution required that there be a showing of individualized suspicion, as well as relevance, before physical evidence of a noninvasive nature–such as an in-person appearance for a lineup or fingerprinting–is demanded of a witness. 
In re May 1991 Will County Grand Jury
, 152 Ill. 2d at 393. Because there was no showing by the State that relevance and individualized suspicion were established before the subpoenas requiring the men to submit to a lineup and fingerprinting were issued, this court held that the subpoenas should have been quashed. 
In re May 1991 Will County Grand Jury
, 152 Ill. 2d at 393-94. In addition, with respect to the demand that the men submit hair samples, this court held that such a request is a far greater intrusion into an individual’s personal privacy than requesting evidence of a noninvasive nature and, therefore, is reasonable only when warranted by probable cause. 
In re May 1991 Will County Grand Jury
, 152 Ill. 2d at 395. Because the men were not charged with any crime, nor was there any testimony implicating them in a commission of a crime, the subpoenas for their hair samples were unreasonable and should not have been granted. 
In re May 1991 Will County Grand Jury
, 152 Ill. 2d at 400.

We hold that our decision in 
In re May 1991 Will County Grand Jury
 is inapposite to the facts in the matter before us. In 
Grand Jury
, no charges had been filed against either man, nor were they suspects in the case. Under those specific facts, this court found that it was an invasion of the men’s privacy to compel them to appear in a lineup and submit physical samples for purposes of inspection by the grand jury. This court emphasized that there is a privacy interest in an individual’s 
private
 records as well as his person, and that the men had not engaged in conduct that lowered their expectation of privacy. In contrast, in the matter at bar, defendant’s sex offender registry information is not a private record. As stated, his conviction for aggravated criminal sexual abuse lowered the privacy bar and culminated in a public record that contains the challenged information.

Defendant raises an additional argument in support of his contention that the Internet provisions of the Notification Law violate his right to privacy under the Illinois Constitution. Defendant argues that, by placing the registry information on the Internet, the state is providing that information to those who have no need for it and who are in no danger. According to defendant, the wide availability of this information does not narrowly serve the governmental purpose of protecting the public from recidivist sex offenders. To the contrary, defendant asserts, the only “accomplishment of Internet dissemination is the individual’s invasion of privacy, and, accordingly, loss of liberty in the form of shunning and shaming which is almost certain to occur after world wide Internet exposure.” It is defendant’s assertion that shaming sex offenders is the main purpose of posting the registry information on the State Police’s Internet site. We disagree.

In rejecting defendant’s claims, we are guided by the recent decision of the United States Supreme Court in 
Smith v. Doe
, 538 U.S. 84, 155 L. Ed. 2d 164, 123 S. Ct. 1140 (2003). Although 
Smith
 addressed the issue of whether Alaska’s Internet sex offender registry was an impermissible 
ex post facto
 statute, and the offenders in that case did not raise any privacy challenges to that statute, we find the Supreme Court’s discussion of the posting of sex offender registry information on the Internet to be instructive. In the course of rejecting the argument that posting sex offender registry information on the Internet constituted punishment, the Court stated:

“[T]he stigma of [the sex offender registry law] results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment. On the contrary, our criminal law tradition insists on public indictment, public trial, and public imposition of sentence. Transparency is essential to maintaining public respect for the criminal justice system, ensuring its integrity, and protecting the rights of the accused. The publicity may cause adverse consequences for the convicted defendant, running from mild personal embarrassment to social ostracism. *** [H]owever, the State does not make the publicity and the resulting stigma an integral part of the objective of the regulatory scheme.

The fact that Alaska posts the information on the Internet does not alter our conclusion. It must be acknowledged that notice of a criminal conviction subjects the offender to public shame, the humiliation increasing in proportion to the extent of the publicity. And the geographic reach of the Internet is greater than anything that could have been designed in colonial times. These facts do not render Internet notification punitive. The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.

The State’s Web site does not provide the public with means to shame the offender by, say, posting comments underneath his record. An individual seeking the information must take the initial step of going to the Department of Public Safety’s Web site, proceed to the sex offender registry, and then look up the desired information. The process is more analogous to a visit to an official archive of criminal records than it is to a scheme forcing an offender to appear in public with some visible badge of past criminality. The Internet makes the document search more efficient, cost effective, and convenient for Alaska’s citizenry.” 
Smith
, 538 U.S. at 98-99, 155 L. Ed. 2d at 180-81, 123 S. Ct. at 1150-51.

Thus, informed by the analysis of the Supreme Court in 
Smith
, we conclude that Illinois may permissibly use the Internet dissemination of sex offender registry information as a “more efficient, cost effective and convenient” means of providing its citizens with important public information. Even if the collateral effect of the Internet notification provision is to “shame” defendant, this effect is the

“result of the offender’s crimes and not of the designation and disclosure statutes. The statutes do not ‘affirmatively’ impose those negative consequences. Rather those consequences are byproducts of the nature of the offender’s crimes and of people knowing about a sex offender’s status - which can occur in many ways, and not merely by way of a community notification statute.” 
Meadows v. Board of Parole & Post-Prison Supervision
, 181 Or. App. 565, 576, 47 P.3d 506, 512 (2002).

 As such, the collateral effects flowing from the dissemination of sex offender information are substantially outweighed by the goal of safeguarding the public–especially children–from convicted sex offenders.

Moreover, we disagree with defendant’s assertion that the protection of the general public is not increased by broad dissemination of his sex offender registry information over the Internet to individuals outside the immediate community in which he resides. The flaw in defendant’s argument can be more fully understood through an example the State provides in its brief to this court. Consider an out-of-state family with young children wishing to purchase a home in Illinois. As part of this process, the family may use the State Police’s Internet site to research the locale to which they desire to move, and discover where that area’s registered sex offenders reside. In this way, the family may plan its move accordingly. This example underscores that,

“as a practical matter, the 
actual
 audience for the [sex offender registry] information is essentially self-defining and self-limiting: [t]he information will be obtained by people who choose to seek it. Bluntly, although the information could, in the abstract, be available to millions of people, the vast majority of those who will take the time and effort to obtain the information will be those who fall within the statute’s remedial ambit, particularly including parents or others responsible for young children who might come into contact with the offender.” 
Meadows
, 181 Or. App. at 577-78, 47 P.3d at 513.

It is our view that publishing the sex offender registry information on the Internet makes the goals of the statute more attainable. See 
A.A. ex rel. M.M. v. New Jersey
, 341 F.3d 206, 212 (3d Cir. 2003).

In conclusion, we also note that our decision today is in accord with the majority of other jurisdictions which have held that th
e posting of sex offender registration information on the Internet merely provides for a different kind of accessibility to substantially the same public information that has been historically available by other means. See, 
e.g.
, 
Smith
, 538 U.S. at 98-99, 155 L. Ed. 2d at 180-81, 123 S. Ct. at 1150-51; 
Femedeer v. Haun
, 227 F.3d 1244 (10th Cir. 2000); 
State of New Mexico v. Druktenis
, 135 N.M. 223, ___, 86 P.3d 1050, 1062 (2004); 
Haislop v. Edgell
, 215 W. Va. 88, ___, 593 S.E.2d 839, 846 (2003); 
Hyatt v. Commonwealth
, 72 S.W.3d 566, 574 (Ky. 2002); 
State v. Stevens
, 26 Kan. App. 2d 606, 613, 992 P.2d 1244, 1249 (1999).

Accordingly, we hold that defendant has failed to satisfy his burden to clearly establish that the Internet dissemination provisions contained in 115(b) of the Notification Law violate his right to privacy under the Illinois Constitution.

II. Substantive Due Process

We next address defendant’s substantive due process challenge to the Internet dissemination provisions found in section 115(b) of the Notification Law. In his brief to this court, defendant starts his argument by asserting that the Internet provisions violate his right to substantive due process guaranteed under the fourteenth Amendment to the United States Constitution (U.S. Const., amend. XIV), and article I, section 2, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §2). Defendant then quotes from each constitutional provision and makes citation to cases in which both the United States and Illinois constitutional provisions were at issue. However, toward the end of his argument, defendant states that he “links his argument specifically to the Illinois due process clause.” We therefore conclude that defendant has explicitly abandoned his claim to relief under the federal due process clause.

With respect to his Illinois due process claim, defendant frames his substantive due process challenge as follows: “the wholesale Internet dissemination of the sex offender’s picture, address and other identifying information violates [defendant’s] fundamental constitutional right: the right to be free from unreasonable invasions of privacy.” At another point in his argument, defendant contends that the Internet provisions violate his “fundamental right to privacy.” In turn, defendant asserts, because the Internet provisions impermissibly restrict a fundamental constitutional right, we must review the challenged statute using strict scrutiny analysis. It is defendant’s position that the Internet provisions fail strict scrutiny analysis because the worldwide dissemination of his sex offender registry information is not narrowly tailored to achieve the government purpose of assisting law enforcement in protecting Illinois citizens. We reject defendant’s assertions.

When confronted with a claim that a statute violates the constitutional guarantees of due process, a court must first determine the nature of the right purportedly infringed upon by the statute. 
In re R.C.
, 195 Ill. 2d 291, 302 (2001). Where the statute does not affect a fundamental constitutional right, the test for determining whether the provision comports with substantive due process is the rational basis test. 
In re J.W.
, 204 Ill. 2d 50, 67 (2003); 
People v. Hamm
, 149 Ill. 2d 201, 216 (1992). The rational basis test is satisfied where the challenged statute bears a rational relationship to the purpose the legislature intended to achieve in enacting the statute. 
Arangold Corp. v. Zehnder
, 204 Ill. 2d 142, 147 (2003); 
In re J.W.
, 204 Ill. 2d at 67. However, where the right infringed upon is among those rights considered “fundamental” constitutional rights, the challenged statute is subject to strict scrutiny analysis. 
Arvia
, 209 Ill. 2d at 537; 
In re R.C.
, 195 Ill. 2d at 303. To survive strict scrutiny, the means employed by the legislature must be necessary to achieve a compelling state interest, and the statute must be narrowly tailored to accomplish this goal, 
i.e.
, the legislature must employ the least restrictive means consistent with the attainment of the intended goal. 
Village of Lake Villa v. Stokovich
, 211 Ill. 2d 106, 122 (2004); 
In
 
re R.C.
, 195 Ill. 2d at 303.

Thus, we must initially determine whether defendant’s substantive due process challenge involves a “fundamental” right. We agree with the State that defendant’s “fundamental right” argument here is really an argument that Internet dissemination would damage his reputation. Defendant asserts that the main effect of Internet dissemination is his invasion of privacy and the resulting shame he may have to endure. It is well settled, however, that damage to an individual’s reputation does not constitute a deprivation of the fundamental right to life, liberty or property. 
Paul v. Davis
, 424 U.S. 693, 701, 47 L. Ed. 2d 405, 414, 96 S. Ct. 1155, 1160-61 (1976); 
Grochocki
, 343 Ill. App. 3d at 673. We agree with the State that “the ‘right’ to be free from the shame, stigma and embarrassment resulting from a conviction for sexually abusing a child is not the kind of ‘fundamental right’ contemplated” by our constitution. Accordingly, because no fundamental right is implicated by the Internet provisions of the Notification Act, strict scrutiny analysis does not apply.

Using the rational basis test, we conclude that the Internet provisions of section 115(b) of the Notification Law bear a rational relationship to the purpose the legislature intended to achieve in enacting that statute. As we explained above, the primary purpose of the Registration Act and Notification Law is to assist law enforcement and to protect the public from sex offenders. We hold that the amendment to the Notification Law allowing for Internet dissemination of sex offender data–public information which is already available by other means–bears a rational relationship to these goals. As we held above, the Internet dissemination provisions contained in section 115(b) of the Notification Law do not violate defendant’s right to privacy. Accordingly, we find nothing unreasonable in the methods of serving the intended purposes of the statutes by providing electronic access to the relevant information. As we explained above, the Internet provides merely another method of allowing public and law enforcement access to information that was already public. We conclude that there is a rational relationship between the disclosure of sex offender registration information via the Internet and the goals of protecting the general public and assisting law enforcement. See 
Grochocki
, 343 Ill. App. 3d at 673.

As stated, it is the burden of the party challenging the validity of a statute to clearly rebut the presumption of constitutionality. 
Burger
, 198 Ill. 2d at 31. We hold that defendant has failed to clearly establish that section 115(b) of the Notification Law violates substantive due process under the Illinois Constitution.

III. Equal Protection

Defendant next challenges section 115(b) of the Notification Law on the basis that it violates equal protection. Once again defendant states, as he did in support of his substantive due process challenge, that “the wholesale dissemination of his photograph, physical characteristics and current address on the Internet is a violation of his right to privacy.” Apart from also stating that strict scrutiny applies and concluding, without discussion, that dissemination of defendant’s sex offender registry information does not satisfy this test, defendant offers no other legal analysis in support of this constitutional claim.

In 
Malchow
, the defendant presented an equal protection challenge that was similarly lacking in substance. We observed that “[d]efendant’s ‘argument’ amounts to little more than a suggestion” and that “[g]laringly absent is any reasoned or developed argument.” 
Malchow
, 193 Ill. 2d at 427. We held that defendant had “utterly failed” to satisfy his burden of showing that the challenged statutes were unconstitutional. 
Malchow
, 193 Ill. 2d at 427. 

The position we took in 
Malchow
 with respect to the defendant’s equal protection argument there is equally applicable to the matter before us. Because defendant has “utterly failed” to present any reasoned or developed argument with respect to his equal protection challenge, we conclude that he has also failed to satisfy his burden of clearly showing that the Internet dissemination provisions of the Notification Law violate equal protection.

IV. 
Ex Post Facto

Defendant next contends that the Internet dissemination provision contained in section 115(b) of the Notification Law violates the 
ex post facto
 clauses of the United States Constitution (U.S. Const., art. I, §§9, 10) and the Illinois Constitution (Ill. Const. 1970, art. I, §6). Although defendant acknowledges that this court in 
Malchow
 
held that the Registration Act and the Notification Law did not violate the 
ex post facto
 clauses, defendant notes that 
Malchow
 upheld the earlier version of the Notification Law, which provided for limited dissemination of the names of offenders listed in the State Police sex offender database. According to defendant, the Internet dissemination provisions contained in section 115(b) of the Notification Act allow “worldwide dissemination” of his sex offender registry information, and renders the statute punitive. We disagree.

Retroactive application of a law that inflicts greater punishment than did the law that was in effect when the crime was committed is forbidden by the 
ex post facto
 clauses of the United States Constitution. 
Lynce v. Mathis
, 519 U.S. 433, 439-41, 137 L. Ed. 2d 63, 71-72, 117 S. Ct. 891, 895-96 (1997). The 
ex post facto
 provisions restrain a legislative body from enacting arbitrary or vindictive legislation, and assures that statutes provide fair warning of their effect. 
Malchow
, 193 Ill. 2d at 418. A law is considered 
ex post facto
 if it is both retroactive and disadvantageous to the defendant. 
Fletcher v. Williams
, 179 Ill. 2d 225, 230 (1997). A defendant is disadvantaged by a law if that law criminalizes an act that was innocent when performed, increases the punishment for a previously committed offense, or alters the rules of evidence by making a conviction easier. 
Malchow
, 193 Ill. 2d at 418. Our court “has long interpreted our own [
ex post facto
] provision in step with Supreme Court pronouncements.” 
Barger v. Peters
, 163 Ill. 2d 357, 360 (1994). Accordingly, the Illinois 
ex post facto
 clause does not provide any greater protection than that offered by the United States Constitution.

Defendant’s argument that the Internet dissemination provisions of the Notification Act constitute retroactive punishment forbidden by the 
ex post facto
 clauses is foreclosed by the recent decision of the United States Supreme Court in 
Smith v. Doe
, 538 U.S. 84, 155 L. Ed. 2d 164, 123 S. Ct. 1140 (2003). In 
Smith
, the Court held that Alaska’s sex offender registration act was nonpunitive and its retroactive application did not violate the 
ex post facto
 clause. We note that in the circuit court defendant relied upon the Ninth Circuit Court of Appeals’ ruling in 
Doe v. Otte
, 259 F.3d 979 (9th Cir. 2001). However, this ruling was reversed by the Supreme Court in 
Smith
. In his brief to this court, defendant neither makes citation to, nor discusses, the 
Smith
 decision.

As stated, in 
Smith
, the United States Supreme Court addressed whether Alaska’s sex offender registration act violated the 
ex post facto
 clause. The registration and notification provisions of the Alaska act are similar to those of Illinois’ Registration Act and Notification Law, including that the information furnished by the offender is maintained by the Alaska Department of Public Safety in a central registry of sex offenders, and the Department makes that information available to the public on the Internet. 
Smith
, 538 U.S. at 90-91, 155 L. Ed. 2d at 175-76, 123 S. Ct. at 1146.

The Court began its analysis by stating that the focus of the inquiry is upon whether the legislature, in passing the statute, meant the statute to establish civil proceedings. If the intent was to enact a statutory scheme that is nonpunitive and civil, the inquiry becomes whether that scheme is so punitive either in effect or purpose so as to negate the legislature’s intent to deem it civil. 
Smith
, 538 U.S. at 92, 155 L. Ed. 2d at 176, 123 S. Ct. at 1147. Because deference is afforded to the stated intent of the legislature, only the clearest proof is sufficient to transform what has been characterized as a civil remedy into a criminal penalty. 
Smith
, 538 U.S. at 103, 155 L. Ed. 2d at 184, 123 S. Ct . at 1153.

The Court first determined that the intent of the Alaska legislature was to create a civil, nonpunitive scheme when it enacted the challenged statute. The Court then assessed the effects of the statute, employing relevant factors set forth in 
Kennedy v. Mendoza-Martinez
, 372 U.S. 144, 168-69, 9 L. Ed. 2d 644, 661, 83 S. Ct. 554, 567-68 (1963), as an analytical framework.

The Supreme Court initially assessed whether the challenged regulatory scheme has been regarded in our history and tradition as punishment. The Court rejected the arguments advanced by the defendants that the statute–most particularly the Internet notification provisions–resembled shaming punishments of the colonial period. The Court explained, in a passage quoted earlier in this opinion as a basis for our rejection of defendant’s privacy argument, that, in contrast to traditional “shaming” punishments which subjected individuals to public ridicule, an offender’s stigma under the challenged statute results from dissemination of truthful information about his criminal record, most of which is already open to the public. 
Smith
, 538 U.S. at 98, 155 L. Ed. 2d at 180-81, 123 S. Ct. at 1150.

Second, the Court held that the statutory scheme did not subject the offenders to an affirmative disability or restraint, as offenders remained free to change jobs or residences. 
Smith
, 538 U.S. at 100, 155 L. Ed. 2d at 181, 123 S. Ct. at 1151. Third, the Court determined that the statute did not promote the traditional aims of punishment. 
Smith
, 538 U.S. at 102, 155 L. Ed. 2d at 183, 123 S. Ct. at 1152. In addition, the Court held that the statute had a rational connection to a legitimate nonpunitive purpose, public safety, which is advanced by alerting the public to the presence of sex offenders in their community. 
Smith
, 538 U.S. at 102-03, 155 L. Ed. 2d at 183, 123 S. Ct. at 1152. Finally, the Court held that the regulatory scheme was not excessive with respect to its purpose: “[t]he 
Ex Post Facto
 Clause does not preclude a state from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences.” 
Smith
, 538 U.S. at 103, 155 L. Ed. 2d at 184, 123 S. Ct. at 1153.

Informed by the analysis of the Supreme Court in 
Smith
, we similarly conclude that defendant has failed to meet his burden to clearly show that section 115(b) of the Notification Law violates the 
ex post facto
 provisions of the United States or Illinois constitutions.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court is reversed. This cause is remanded to the circuit court for further proceedings.

Reversed and remanded.

FOOTNOTES
1:     
1
We note that defendant did not provide the court below with any facts or data to support his assertion that his sex offender registry information will be accessed by more people on the Internet, or that it would be more readily or widely accessed compared to the other, more traditional methods for accessing this information which is already provided for under the Notification Law.