**2017 IL 121755**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 121755)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
JARED M. STAAKE, Appellant.

_Opinion filed November 30, 2017._

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a jury trial on a first degree murder charge, defendant Jared M. Staake was convicted in the circuit court of Schuyler County of second degree murder (720 ILCS 5/9-2(a)(1) (West 2012)) for the stabbing death of Michael Box. The trial court sentenced defendant to 18 years in prison. On appeal, the appellate

court affirmed his conviction,[1] finding that (1) the State's amendments of the initial charge from second degree murder to first degree murder did not amount to a "new and additional" charge for speedy-trial purposes and (2) defendant's failure to make an offer of proof deprived the appellate court of a proper record to determine whether the trial court abused its discretion in granting the State's motion *in limine* to preclude defendant from presenting evidence and argument as to an intervening cause of death. For the reasons that follow, we affirm the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3        In July 2013, the State charged defendant by information with second degree murder, alleging that he committed the first degree murder of Box while acting under sudden and intense passion resulting from serious provocation from Box. Trial was scheduled to commence January 13, 2014. In October 2013, defendant disclosed that he intended to assert self-defense as an affirmative defense if the cause proceeded to trial. Thereafter, the State filed a motion *in limine*, asking the trial court to prohibit defendant from presenting evidence or argument relating to Box's refusal of medical treatment being an intervening cause of death.

¶ 4        In early December 2013, the State told the court at a status hearing that it might amend the charge to first degree murder given that defendant was now claiming self-defense. The State asserted that its proposed amendment "shouldn't change anything, because even in a second-degree murder case, the State still has to prove first-degree murder." The court instructed the State to make any amendment to the charging instrument within the next seven days. The following day, the State filed an amended information, alleging that defendant committed first degree murder (720 ILCS 5/9-1(a)(1) (West 2012)) by stabbing Box, thereby causing his death, while knowing that the stabbing would cause his death. The amended information no longer charged second degree murder.

---

[1]The appellate court affirmed the guilty verdict and the 18-year prison sentence but made minor modifications to certain fees and costs associated with the sentence that are not at issue in the appeal now before us.

¶ 5    On December 18, 2013, the trial court conducted a hearing on the State's motion *in limine* to prohibit defendant from producing any evidence or argument about an intervening cause of death. Defendant argued that causation was an essential element of the crime and, as such, was a question of fact for the jury to determine. The trial court found that if the defense planned to challenge the State's evidence of causation, it would have to produce its own evidence of causation and not just speculation of what might have happened. The trial court then granted the State's motion with the following qualification:

> "It is quite true that the [State] must prove causation. *** I know there have been statements by the [State] on more than one occasion that they have a forensic scientist who is going to testify as to cause of death. And I agree it is their burden and one of the elements of their case to prove causation.
>
> On the other hand, if the Defense is going to raise an alternate theory, a question mark to some of the [State's] evidence, it has to be raised by evidence, not just by speculation. *** And so if the Defense thinks they're just going to come in and say, oh, the defendant [*sic*] went to the hospital, but he left the hospital and we don't know what would have happened if he had stayed at the hospital, that's not evidence. That's guess, speculation, and conjecture. So if the Defense intends to actually question the State's causation evidence, I think they're entitled to do that, but then they're going to have to come up with, with actual evidence of that, not just their own speculation of what might have happened. ***
>
> *** [I]f the defense has evidence *** to actually question the causation evidence, then *** through an offer of proof they can *** introduce that to me outside the presence of the jury, and I'll see if it raises to that. But what I'm not going to let either side do in this case is just raise question marks for the jury with no evidence behind it ***.
>
> So the defense response didn't, by affidavit or otherwise, indicate that they had any evidence with regard to causation. And they may. I simply don't know. I don't know if they have a forensic expert as well that's going to question what the State's witnesses have said. But if that's the case, I'm going to need to know about that, and I'm assuming that's going to have been produced in the discovery. But at this juncture, I don't have any of that information. So I'm

- 3 -

granting the [State's] motion *** unless the Defense has *** actual evidence they're going to produce. And if they do, I'm going to see that in an offer of proof outside the presence of the jury."

¶ 6 After moving on to other matters, the trial court informed defendant of the nature of the first degree murder charge and the penalties he faced if found guilty. Defendant indicated that he understood and persisted in his plea of not guilty. Defense counsel then conceded that he was prepared for trial and that the amendment from second degree murder to first degree murder had no affect on the defense's preparation for trial.

¶ 7 On January 3, 2014, defendant argued that causation was an element of the offense and that he therefore had a constitutional right to cross-examine the State's witnesses—in particular, the medical examiner—on the issue of causation, and he should not first have to present a proffer of what the State's witnesses might provide. The court responded by explaining that the requirement of a proffer was intended to prevent a "fishing expedition that you know in advance isn't going to produce any evidence because you know what the medical examiner said." The court told defendant that he could still submit a proffer of evidence he expected to extract from the medical examiner.

¶ 8 On January 9, 2014, the State filed a second amended information. The new information again charged defendant with first degree murder (720 ILCS 5/9-1(a)(2) (West 2012)) but this time under a different theory than that alleged in the first amended information. The second amended information alleged that defendant stabbed Box, causing his death, knowing that the stabbing created a strong probability of death or great bodily harm.

¶ 9 On January 13, 2014—the day of trial—defendant filed a motion challenging the second amended information. Defendant argued that it charged him under a different subsection of the first degree murder statute than had the first amended information. Defendant maintained that section 9-1(a)(2) contained a different *mens rea* requirement than section 9-1(a)(1). As a result, defendant argued that he now lacked time to adequately prepare for trial that day on the second amended information. Defendant requested that the trial court prohibit the State from charging first degree murder under section 9-1(a)(2).

¶ 10        The trial court denied defendant's motion as to the second amended information. Defendant then requested a continuance to prepare for trial on the recent amendment. The State responded that, when charging first degree murder, the State is required to notify a defendant only that he is being charged with first degree murder, not to identify which subsection of the first degree murder statute the State intends to pursue. The court denied defendant's motion for a continuance, finding that defendant had not pointed to anything about the trial or the evidence that had changed because of the second amended information.

¶ 11        Defendant again inquired about whether he could question the State's expert witnesses about the cause of death. The trial court responded, "No. The limitations as to whether or not the [victim's] seeking or not seeking medical treatment affected causation, and my ruling stands with regard to that. You may not go into those issues."

¶ 12        The cause then proceeded to a trial in front of a jury, where the evidence presented was as follows. Casey Slusser testified that she was employed managing carnival games for Kenny Fox, who operated a travelling carnival business. In July 2013, Slusser worked for Fox at the Schuyler County fair. She and Box were the only two employees who managed carnival games for Fox, and while traveling for work, both Slusser and Box lived together in a trailer in which they had separate rooms. Slusser described Box as her ex-boyfriend's best friend and her "protector."

¶ 13        Slusser further testified that on July 1, 2013, defendant visited the fairgrounds and socialized with other carnival workers. Slusser and Box began playing a beer-drinking game. After they finished playing the game, Box went to his room. Slusser asked defendant if he wanted to come to her room. Defendant agreed, and the two went to Slusser's room, where they lay down and talked. After about two or three minutes, Box began yelling and banging on Slusser's door. Defendant exited Slusser's room, opening the door so hard that it banged off the trailer.

¶ 14        Slusser testified that as defendant exited the trailer, Box punched him in the face. Defendant took a couple of steps backward before taking a knife out of his pocket. Defendant stabbed Box with the knife in the left abdomen. Box fell into a pile of tires. Defendant said, "I'm sorry. I didn't mean to stab you," before running off.

¶ 15    Slusser took Box to the hospital and dropped him off there. Two days later, Slusser checked on Box in his trailer. She found him dead and lying naked on the floor.

¶ 16    Dr. Mark Day testified that in the early morning hours of July 2, 2013, he treated Box at the hospital for a "small" stab wound. Day testified that it was difficult to examine Box because he was very uncooperative. Day tried to examine the wound, but Box took a swipe at him. Box was not bleeding significantly, and Day left the room for a minute. By the third or fourth time that Day tried to evaluate Box, Box had passed out. Day did not think the stab wound had penetrated Box's fascia. Day explained that the fascia is underneath the muscle, and in the absence of an injury to the fascia, the wound is one that "you need not worry about that much." Day reluctantly stitched up Box's wound because he believed Box didn't want anything else done. Box later woke up and left the hospital without being officially discharged.

¶ 17    Defendant testified that he was in Slusser's room when Box started yelling and pounding on Slusser's door for 20 to 30 seconds. Defendant decided it was time to go, so he opened Slusser's door and stepped outside. As he stepped onto the ground, he was punched in the face but did not see who hit him. As defendant staggered backward, he saw Box approaching him. Defendant pulled a folding knife out of his pocket and stabbed Box. Defendant testified that he stabbed Box because he was afraid for his life and did not know what else to do.

¶ 18    Dr. Amanda Youmans, a forensic pathologist, testified that she performed the autopsy of Box. She discovered gastric contents in Box's abdomen, indicating that the knife wound had penetrated Box's stomach. She opined that he died from septic shock due to acute peritonitis resulting from a stab wound to the stomach.

¶ 19    Youmans further testified that she learned that Box had returned to the hospital after his initial admission and was prescribed opiate pain medication. The toxicology report revealed that Box had opiates in his system at an elevated level at the time of death, but it was not a lethal amount and was not a contributing cause of his death.

¶ 20    During closing argument, defense counsel conceded that the State had proven the element of causation, telling the jury the following:

"I confess to you right here, right now, folks, when you get your jury instructions, next to that [causation] element, put guilty, because he did; he stabbed Mr. Box. Mr. Box some two days later perished. [Defendant] set those dominoes falling for Mr. Box in an adverse way."

¶ 21    At the State's request, and over defendant's objection, the trial court instructed the jury on second degree murder. The jury found defendant guilty of second degree murder. The trial court sentenced him to 18 years in prison, after noting defendant's violent and extensive criminal history.

¶ 22    On appeal to the appellate court, defendant argued that the State violated the speedy-trial statute by amending the charge to first degree murder. Defendant maintained that first degree murder was a "new and additional charge," subject to compulsory joinder with the second degree murder charge. Therefore, delays attributable to defendant on the second degree murder charge were not attributable to him with respect to the first degree murder charge. Second, defendant argued that the trial court erred in restricting evidence and argument pertaining to causation.

¶ 23    The appellate court affirmed. 2016 IL App (4th) 140638. With respect to the speedy-trial issue, the court found that first degree murder and second degree murder require proof of the same elements, with the only difference being that second degree murder requires the additional proof of a mitigating factor (see 720 ILCS 5/9-2(a)(1), (a)(2) (West 2012)). First degree murder is not a " 'new and additional charge' " for purposes of compulsory joinder because the criminal behavior the State alleges defendant committed is the same for both charges. 2016 IL App (4th) 140638, ¶ 69. The appellate court also noted that defense counsel conceded that the amendment did not undermine his readiness for trial. The appellate court observed that defense counsel was already prepared to defend against first degree murder because the charge of second degree murder had already alleged that defendant had committed first degree murder. *Id.* ¶ 71. The appellate court acknowledged that its decision—finding that the first degree murder charge was not a "new and additional" charge—was inconsistent with the decision in *People v. Izquierdo-Flores*, 367 Ill. App. 3d 377 (2006), but declined to follow that decision. 2016 IL App (4th) 140638, ¶ 73.

¶ 24    With respect to the causation issue, the appellate court rejected as forfeited defendant's argument concerning evidence that the victim's resistance to treatment

was an intervening cause of his death. The appellate court found that defendant "failed to make an offer of proof regarding the evidence the trial court allegedly improperly kept out." *Id.* ¶ 80. The appellate court noted that "the trial court did not *prohibit* defendant from cross-examining the State's witnesses on the issue of causation" but merely required defendant to make an offer of proof before doing so. (Emphasis in original.) *Id.* ¶ 79. Thus, "[i]f defendant had a legitimate factual basis to question the State's witnesses or introduce other testimony about causation, he was free to do so." *Id.*

¶ 25     Defendant filed a petition for leave to appeal, which this court allowed. Ill. S. Ct. R. 315(a) (eff. Mar. 15, 2016).

¶ 26                                     ANALYSIS

¶ 27                                I. *Speedy-Trial Issue*

¶ 28     Before this court, defendant first argues that there was a statutory speedy-trial violation in this case because compulsory joinder rules required the State to join the first degree murder charge with the initial second degree murder charge. According to defendant, the two charges are substantively different, and therefore any delays on the initial second degree murder offense cannot be charged to him on the subsequent amendments to the information. Defendant acknowledges that he did not raise the speedy-trial claim before the trial court, but he argues that his claim may nonetheless be reviewed under second-prong, plain error review or, in the alternative, on the basis that his trial counsel was ineffective in failing to file a motion raising the speedy-trial claim.

¶ 29     The State responds that defendant forfeited the speedy-trial issue by failing to raise the claim in the trial court in any way, including by filing the required pretrial motion to dismiss. Furthermore, defendant cannot satisfy either the plain error or the ineffective assistance of counsel standards.

¶ 30     To preserve a claim of error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion. *People v. Sebby*, 2017 IL 119445, ¶ 48. Forfeiture results from the failure to do either. *Id.* Additionally applicable to this case, section 114-1 of the Code of Criminal

- 8 -

Procedure of 1963 provides that a defendant who fails to file a pretrial motion to dismiss based on statutory speedy-trial grounds is considered to have "waived" those grounds. 725 ILCS 5/114-1 (West 2012).

¶ 31    Defendant argues that this court should consider his claim under the second prong of the plain error doctrine, citing a number of appellate court opinions that have found that a violation of the speedy-trial statute qualifies for second-prong review as an error that challenges the integrity of the judicial process (see, *e.g.*, *People v. Mosley*, 2016 IL App (5th) 130223, ¶ 9; *People v. Smith*, 2016 IL App (3d) 140235, ¶ 10; *People v. McKinney*, 2011 IL App (1st) 100317, ¶ 29; *People v. Gay*, 376 Ill. App. 3d 796, 799 (2007)). Under the plain error doctrine, a reviewing court may exercise its discretion and excuse a procedural default of not bringing an error to the attention of the trial court in two instances: "when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (citing *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)).

¶ 32    The State responds that the appellate court cases relied upon by defendant erroneously found that unpreserved claims of a statutory speedy-trial violation were reviewable under second-prong plain error. The State points out that although a defendant possesses both a constitutional and statutory right to a speedy trial (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; 725 ILCS 5/103-5(a) (West 2012)), the constitutional and statutory rights are not coextensive (see, *e.g.*, *People v. Phipps*, 238 Ill. 2d 54, 65 (2010); *People v. Cordell*, 223 Ill. 2d 380, 385-86 (2006)). According to the State, the legislature, having created the statutory right, could also take it away for failure to timely raise it, *i.e.*, deeming it "waived" in the words of the statute. The State urges that it is only a speedy-trial claim that rises to a constitutional dimension that may be subject to second-prong plain error review and defendant does not argue such a constitutional claim here.

¶ 33    We note that the initial step under either prong of the plain error doctrine is to determine whether the claim presented on review actually amounts to a "clear or

obvious error" at all. *Sebby*, 2017 IL 119445, ¶ 49; *People v. McLaurin*, 235 Ill. 2d 478, 489 (2009). For the reasons that follow, we find that no error occurred. Thus, it is unnecessary in this case to determine whether the appellate court precedent, which finds that a forfeited error involving a statutory speedy-trial violation is reviewable as second-prong plain error, should be overruled.

¶ 34 Here, defendant argues that his speedy-trial right was violated because first degree murder was a "new and additional charge" with respect to which none of the previous delays in the case can be attributed to him.

¶ 35 Section 103-5(a) provides in relevant part as follows:

"Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2012).

¶ 36 If a delay is attributable to a defendant on the original charge, that delay is not always attributable to the defendant on a subsequently filed charge. *Phipps*, 238 Ill. 2d at 66. The following rule, called the *Williams* rule, has developed in such situations:

"Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges. Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained." *People v. Williams*, 94 Ill. App. 3d 241, 248-49 (1981).

¶ 37 This case hinges on whether the first degree murder charge was a new and additional charge to the original second degree murder charge. We review *de novo*

the question of whether a subsequently filed charge is considered "new and additional" relative to the *Williams* rule. *Phipps*, 238 Ill. 2d at 67.

¶ 38    In *Phipps*, we observed that the purpose of the rule established in *Williams* is to prevent trial by ambush:

> "[T]he rule, therefore, centers on whether the defendant had adequate notice of the subsequent charges to allow preparation of a defense. The focus is on whether the original charging instrument gave the defendant sufficient notice of the subsequent charges to prepare adequately for trial on those charges. If the original charging instrument gives a defendant adequate notice of the subsequent charges, the ability to prepare for trial on those charges is not hindered in any way. Thus, when the State files the subsequent charge, the defendant will not face 'a Hobson's choice between a trial without adequate preparation and further pretrial detention to prepare for trial.' [*People v.*] *Williams*, 204 Ill. 2d [191, 207 (2003)]. Rather, the defendant may proceed to trial on the subsequent charges with adequate preparation instead of being forced to agree to further delay. In those circumstances, the rationale for declining to attribute to the defendant delays in connection with the original charges does not apply." *Phipps*, 238 Ill. 2d at 67-68.

¶ 39    *Phipps* found the original indictment and the subsequent charging instrument in that case alleged the same conduct—that the defendant drove a motor vehicle under the influence of alcohol and collided with another vehicle, causing the death of the victim. *Id.* at 68. The original indictment thus provided the defendant with the material allegations of the subsequent information. The court also found it significant that the two charges to be compared—reckless homicide and aggravated DUI—had essentially the same elements and provided the same penalty. *Id. Phipps* therefore concluded that the aggravated DUI charge was not "new and additional" for speedy-trial purposes. Thus, any delays attributable to the defendant on the reckless homicide charge were also attributable to him on the subsequent charge of aggravated DUI, and consequently no speedy-trial violation occurred. *Id.* at 70.

¶ 40    The same conclusion applies in the present case. Here, the original information and the two amendments all alleged that defendant committed first degree murder[2] and all alleged identical conduct by stating that defendant "stabbed Michael Box with a knife, thereby causing the death of Michael Box." Moreover, both crimes have the same elements. First degree murder and second degree murder each require the same mental state: either intent or knowledge. *People v. Jeffries*, 164 Ill. 2d 104, 122 (1995). When the State charges a defendant with second degree murder it must still prove all of the elements that comprise the offense of first degree murder. Because of the identity of elements, second degree murder is not a lesser included offense of first degree murder but rather "a lesser mitigated offense." (Emphasis omitted.) *Id.* The State must prove the elements of first degree murder beyond a reasonable doubt before the jury can even consider whether a mitigating factor for second degree murder has been shown, such as whether the accused acted under a sudden and intense passion resulting from serious provocation or whether his true belief in self-defense was unreasonable (see 720 ILCS 5/9-2(a)(1), (a)(2) (West 2012)). Thus, it is clear that the original information provided defendant notice of the material allegations in the subsequent amendments under the circumstances of this case.

¶ 41    Furthermore, because the crimes of second degree murder and first degree murder have the same elements, they are subject to the same defenses. Self-defense defeats both charges because it negates one of the elements of the crime—that the killing be unjustified. See *People v. Romero*, 387 Ill. App. 3d 954, 965 (2008) ("lack of self-defense, when self-defense is raised, is an element of first or second degree murder"). Here, defendant indicated early on that he intended to raise self-defense as an affirmative defense to the killing. It was also clear that his strategy would remain the same regardless of whether second degree or first degree murder was charged. After the State amended the information for the first time on December 5, 2013, to charge first degree murder, defense counsel conceded that he

_____

[2]Specifically, the second degree murder charge alleged "the defendant committed the offense of second degree murder in violation of section 9-2(a)(1) *** in that *while committing first degree murder* in violation of section 9-1(a)(1)" and, while acting under a sudden and intense passion resulting from serious provocation, stabbed the victim with a knife, thereby causing the death of the victim. (Emphasis added.)

was prepared for trial and that the amendment made no difference in terms of his preparation:

> "To echo what the State just mentioned ***, to prove second degree murder, you basically have to prove first degree murder first. So this really changes nothing at all as far as our preparation and being ready for trial. All of the evidence is exactly the same as it was when second degree murder was the pending charge. And just as we answered a few weeks ago that we were ready for trial, we still are ready for trial."

¶ 42    Defendant also claims that amendment to the theory of first degree murder (from knowing to strong probability) on the day of trial and the State's request of a jury instruction on second degree murder at the close of the evidence created a "trial by ambush." We find no merit to these contentions. First, defendant has not pointed to any concrete way in which amending the information to change the subsection of the first degree murder charge inhibited his ability to prepare for trial or rendered him unprepared. The earlier amendment to the information, which occurred more than a month before, was more significant in that it dropped the second degree murder language, yet counsel conceded that that amendment posed no challenge to his trial preparation. The change in the information of subsections of first degree murder charged did not affect defendant's trial strategy of self-defense. In denying defendant's motion for a continuance on the day of trial, the court correctly observed that,

> "I haven't heard anything this morning that indicates to me that *** by filing this amended charge that *** anything is changed, other than the selection of the subsection. And *** there's plenty of case law *** that, even during trial, permits the judge to amend the charges so that [they] fit with the proof entered.

> ***

> If I was hearing that all of a sudden *** there was some new thing that caught you off guard, no, but everybody knew what this was. *** I've not heard any of you argue that, that there's anything different other than that the State is filing an information that will fit the evidence that you've all had and all been working with."

¶ 43    Defendant also cannot successfully claim that he was ambushed by the second degree murder instruction. Second degree murder instructions are possible in any first degree murder prosecution. When the evidence supports submitting an instruction on self-defense in a first degree murder case, the court may, either *sua sponte* or at the direction of the State, give a second degree murder instruction, even if the defendant objects. *People v. Wilmington*, 2013 IL 112938, ¶ 44 (defendant's right to refuse jury instruction on lesser-included offense does not apply to jury instruction on mitigating factor in first degree murder prosecution, and such instruction may be given without his consent). Furthermore, the unreasonable self-defense prong of the second degree murder statute is so closely related to self-defense that "when the evidence supports the giving of a jury instruction on self-defense, an instruction on second degree murder must be given as a mandatory counterpart" at the defendant's request. *People v. Washington*, 2012 IL 110283, ¶ 56.

¶ 44    Finally, defendant argues that the first degree murder charge should be considered "new and additional" because first degree murder carries a greater penalty than second degree murder. We find, however, that the difference in penalties under the circumstances of this case does not alone suffice to render the first degree murder charge "new and additional." Both first degree murder and second degree murder provide the possibility of lengthy prison sentences. Indeed, defendant was sentenced to 18 years' imprisonment in this case. It is unclear from defendant's argument how the difference in possible penalties in this case would have changed defendant's trial strategy or hampered his ability to prepare a defense.

¶ 45    Accordingly, we conclude that the first degree murder charge was not a new and additional charge. It therefore relates back to the original second degree murder charge, and any delays attributable to defendant on the initial charge are also attributable to him on the subsequent charge. We thus overrule the contrary decision of the appellate court in *Izquierdo-Flores*, 367 Ill. App. 3d at 383-86.

¶ 46    Defendant does not argue that absent a finding that the first degree murder charge was new and additional, a speedy-trial violation occurred in this case. Thus, we find that no error occurred and defendant cannot satisfy the first step in the plain error analysis.

- 14 -

¶ 47    We next address defendant's claim that his trial counsel was ineffective in failing to raise the speedy-trial issue in the trial court. To establish a claim of ineffective assistance of counsel, defendant must show that his counsel's performance was deficient and that it resulted in prejudice. *Phipps*, 238 Ill. 2d at 65; *Cordell*, 223 Ill. 2d at 385. Counsel's failure to assert a speedy-trial violation cannot establish either prong of an ineffective assistance claim if no speedy-trial violation occurred. *Phipps*, 238 Ill. 2d at 65; *Cordell*, 223 Ill. 2d at 385.

¶ 48    We have already held that no speedy-trial violation occurred in this case. Thus, trial counsel's failure to raise a speedy-trial claim was neither deficient nor prejudicial under the circumstances. See *Phipps*, 238 Ill. 2d at 70. Accordingly, defendant cannot establish a claim of ineffective assistance of counsel.

¶ 49                    II. *Failure to Make an Offer of Proof as to Causation*

¶ 50    Next, defendant argues that the trial court erred in precluding him from *arguing* to the jury that Box's reluctance to accept medical treatment was the cause of his death. Before the appellate court, defendant had argued that the trial court had erred in barring him from presenting *both testimony and argument* concerning Box's resistance to medical treatment.

¶ 51    It is well settled that the key to preserving for review an error in the exclusion of evidence is an adequate offer of proof in the trial court and a defendant's failure to make such an offer results in forfeiture of the issue. *People v. Way*, 2017 IL 120023, ¶ 33; *People v. Patterson*, 2014 IL 115102, ¶ 123; *People v. Andrews*, 146 Ill. 2d 413, 420-21 (1992); see also *People v. Pelo*, 404 Ill. App. 3d 839, 875 (2010) (failure on the part of defendant to make a proper offer of proof forfeits review of his challenge to the trial court's granting of a motion *in limine*, as well as review of defendant's argument that he was not given an opportunity to make his case).

¶ 52    Here, it is clear that the trial court did not categorically prohibit defendant from cross-examining the State's witnesses on the issue of causation. Nor did the trial court absolutely bar defendant from arguing to the jury that the victim's refusal of medical treatment was an intervening cause. Instead, the trial court clearly ruled that before defendant could ask specific questions on cross-examination or make an argument to the jury, he must first make a proffer to show that there was a factual

basis for the questioning or argument. All that was required of the defense by the trial court was that it first explain, outside of the presence of the jury, what testimony it expected to elicit in view of the fact that the medical examiner would be testifying that the cause of death was the stab wound delivered by defendant's hand. Defendant could have called Dr. Day in for questioning at the hearing on the motion *in limine* in an effort to confirm defense counsel's speculation that if Box had undergone further treatment, he would have recovered. The defense refused to do this. And its argument is now forfeited.

¶ 53    The same rule of forfeiture applies to defendant's contention that the trial court improperly barred any *argument* he might have wanted to make to the jury on causation. Again, defendant never sought to present an offer of proof or even a proffer as to any testimony or documentary evidence that might support defendant's theory of causation. Defendant now argues that even without any evidence from defense witnesses (and presumably even without defendant availing himself of the repeated invitations to make an offer of proof or even a proffer), Dr. Day's testimony presented ample evidence to support a causation defense. But defendant does not explain how this is so. Dr. Day never testified that the victim would have recovered had he sought further treatment after receiving stitches the night of the stabbing. Nor did he testify as to any likelihood of recovery with further treatment. On the other hand, the forensic pathologist testified that the stab wound inflicted by defendant was the cause of death. It is well settled that if the State shows the existence of a sufficient cause of death through the act of the accused, the death is presumed to have resulted from such act. *People v. Domagala*, 2013 IL 113688, ¶ 39; *People v. Meyers*, 392 Ill. 355, 359 (1945); see also *People v Mars*, 2012 IL App (2d) 110695, ¶ 16. To relieve a defendant from criminal liability, an intervening cause or a supervening act must be "completely unrelated" and "disconnected" from any act of the defendant. (Internal quotation marks omitted.) *Domagala*, 2013 IL 113688, ¶ 39.

¶ 54    Once Dr. Day's testimony was given at trial, if the defense felt that "ample evidence to support a causation defense" had been presented, as defendant now claims, it could have approached the judge upon the close of the evidence and requested permission to argue to the jury that the State had failed to prove causation based on the "ample evidence" that had been unknown at the time the judge made his ruling on the motion *in limine* in December 2013. Instead of taking that tack, the

defense did just the opposite—it conceded to the jury that the State had met its burden on the element of causation. Under these circumstances, defendant has forfeited his claim.

¶ 55    Defendant does not allege that his counsel was ineffective in his closing argument in conceding causation. Moreover, defendant, having conceded to the jury that the State had proven causation beyond a reasonable doubt, cannot now claim on appeal that he was precluded from arguing a lack of causation, especially where the trial court had made it clear that its ruling in granting the motion *in limine* was conditional and based on a lack of evidence to show anything other than that the stab wound caused the death of the victim. See *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000) (a party forfeits his right to complain of an error where to do so is inconsistent with the position taken previously by the party).

¶ 56                                    CONCLUSION

¶ 57    For the foregoing reasons, we affirm the judgment of the appellate court affirming defendant's conviction for the second degree murder of Michael Box.

¶ 58    Affirmed.