NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (4th) 160912-U

NO. 4-16-0912

FILED
November 21, 2019
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| THOMAS D. HISE, | ) | No. 15CF178 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Timothy J. Steadman, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant could not challenge his sentence as excessive where he failed to file a motion to withdraw his guilty plea. Pursuant to Illinois Supreme Court Rule 472 (eff. May 17, 2019), we remand the matter to the trial court to allow defendant the opportunity to file a motion regarding his claim for *per diem* credit.

¶ 2   Defendant, Thomas D. Hise, pleaded guilty to unlawful delivery of a controlled substance with a prior unlawful possession of a controlled substance with intent to deliver conviction (720 ILCS 570/401(a)(2)(A) (West 2014)) pursuant to a partially negotiated plea agreement. In exchange, the State capped its sentence recommendation at 15 years' imprisonment. The trial court sentenced defendant to 10 years and 6 months in prison. The court also assessed various fines and fees. Defendant appeals, arguing that (1) the trial court relied on improper sentencing factors at his sentencing hearing, (2) the court's errors had the cumulative effect of

denying defendant a fair hearing, and (3) defendant is entitled to additional *per diem* monetary credit against court-assessed fines. We affirm in part and remand the matter to the trial court to allow defendant the opportunity to file a motion with respect to his claim for additional *per diem* credit.

¶ 3                                          I. BACKGROUND

¶ 4          In February 2015, the State charged defendant with one count of unlawful delivery of a controlled substance with a prior unlawful possession of a controlled substance with intent to deliver conviction (720 ILCS 570/401(a)(2)(A) (West 2014)).

¶ 5          In November 2015, defendant initially entered an open plea of guilty. The trial court admonished defendant and informed him that the offense for which he was charged, a Class X felony, carried a possible prison sentence of 6 to 60 years' imprisonment. The State set forth the following factual basis:

> "[The] State would present the testimony of Asa Rhoades, who would testify that on May 31st *** 2013 *** she was acting as an informant for the Decatur Police Department. And she purchased cocaine in the amount of 27.8 grams from this defendant on that day. Decatur Police Department detectives would testify that they observed [Rhoades] before and after the controlled buy. And the buy was audio recorded. In a Mirandized interview this defendant admitted to selling cocaine."

The trial court confirmed defendant's plea was knowingly and voluntarily made and determined that a factual basis existed for the plea.

¶ 6          On April 19, 2016, at the sentencing hearing, the State explained that a partially negotiated plea agreement had been reached where the State had agreed to cap the sentencing

recommendation to 15 years in prison. In exchange, defendant again pleaded guilty to unlawful delivery of a controlled substance with a prior unlawful possession of a controlled substance with intent to deliver conviction (720 ILCS 570/401(a)(2)(A) (West 2014)). The trial court confirmed that defendant's guilty plea was knowingly and voluntarily made. The court also took judicial notice of the factual basis previously presented at the hearing in November 2015.

¶ 7        The State presented no additional evidence in aggravation. As for evidence in mitigation, defendant presented the testimony of his mother, Debbie Hill. Hill testified that defendant had a "tough life," Hill had been to prison in 1985 when defendant was growing up, defendant's father was an alcoholic, and defendant "got on the wrong track with the wrong people." Hill stated that defendant was nonetheless a "very good father" to his two sons who were both in college at the time of the sentencing hearing. Hill further testified that defendant's attitude had changed following his arrest in the instant case. Defendant had a full-time job managing Hill's restaurant and "[h]e would take over [Hill's] restaurant." Hill stated that defendant has "been going to counseling, church, [and he was] trying to be better ***." Hill also noted that defendant had heart surgery two or three months before the sentencing hearing.

¶ 8        Amy Rizzo, a long-time friend of defendant's since high school, testified to defendant's "positive character," stating that defendant coached his children's sports teams and he would "support" the other children on the teams. Rodney Walker, a pharmaceutical representative who had known defendant for over thirty years, testified that defendant is a "good guy" who "made a bad decision."

¶ 9        Defendant subsequently made a statement in allocution, stating that "[w]hen [he] did this, [his] life was out of control. [He] was desperate. [His] restaurant was near bankrupt, and

[he] was severely depressed." Defendant expressed his remorse, stating that he was "very sorry to his *** family" and what his "conduct [has] done to [his] two sons." Defendant further stated that he "plan[ned] to enroll in mental health treatment and substance abuse treatment during [his] incarceration."

¶ 10 Following defendant's statement in allocution, the State recommended a sentence of 14 years in prison. In support of its recommendation, the State noted the presentence report showed defendant had previously been convicted "for essentially the exact same offense" and he "spent 8 years in the Department of Corrections *** at the age of 33 ***." Defense counsel emphasized defendant's medical condition, Hill's testimony that defendant had a job waiting for him, as well as defendant's intent to seek "counseling for mental health issues and also substance abuse issues in the Department of Corrections." Defense counsel requested the minimum sentence of six years' imprisonment.

¶ 11 In sentencing defendant, the trial court stated as follows:

"The Court has considered the contents of the Presentence Report, the evidence in mitigation, defendant's statement in allocution, the arguments and recommendations of counsel, and the statutory factors in mitigation and aggravation.

* * *

So the question is what's the most appropriate sentence under the circumstances. There are some positives regarding the defendant's background and character. He did serve in the military, [and he] did serve in the reserves. He's

obviously done some good for the community, young people in the community[,] at certain times based upon the evidence.

He did admit his guilt. He's expressed his remorse, which is a positive *** factor in mitigation. Apparently he's taken steps to alleviate some of the issues that confront him regarding mental health and drug usage. So those are all positive things and to his credit. He has a lot of support, he's fortunate. No matter what happens today, his family and friends will be here, that's obvious.

So this isn't the end. It's actually the beginning of the rest of his life. He has to put this part behind him and move forward, and fortunately, he has the support to do that, which we don't always see in this courtroom.

I would also add, however, *** [this] is the second time around, and this was an intent to deliver offense. We're not talking about somebody who is addicted to drugs and just personally uses drugs. We're talking about somebody who makes a profit off drugs, that means other people get the drugs, they get hooked, and for many of them their life turns into a living hell. Without the drug activity and drug dealing this would never happen.

So to think somehow this is not a serious offense is simply silly. It certainly is. It's the second time around for [defendant], unfortunately. I think most reasonable people would say that the prison sentence has to be more than last time. If for no other reason than to deter[ ] others who think they might be able to go to prison, get out, [and] start up again in the drug business[.] *** [S]ociety will not tolerate that."

¶ 12        The trial court sentenced defendant to 10 years and 6 months' imprisonment. The court also imposed various fines and fees with $200 of credit applied toward defendant's monetary assessments. The court admonished defendant, explaining that, in order to appeal, defendant "must file within 30 days of today's date a written motion to withdraw or take back [the] guilty plea."

¶ 13        On May 6, 2016, defendant *pro se* filed a written request to reduce his sentence, stating that he had undergone two heart surgeries, went to "rehab and counseling," and had secured employment upon his return home. He also noted the "financial burden" of his incarceration to his family. On October 26, 2016, defense counsel filed a "first amended motion to reconsider sentence," arguing, *inter alia*, that his criminal conduct was induced by a co-defendant and his health was declining in prison following his surgeries.

¶ 14        On November 29, 2016, at the hearing on defendant's motions, the State reiterated that defendant had previously been incarcerated for the same offense years earlier. Defense counsel made no further argument regarding the motion to reconsider his sentence. The trial court denied defendant's motion, stating as follows:

>        "[T]he Court, again, has reviewed the affidavit and the motion. [The State's] point
>        is well-taken. It's the second Class X drug felony. During the course of the
>        sentencing hearing, the Court considered all factors in mitigation, aggravation, and
>        actually imposed a sentence quite a bit less than suggested by the State."

¶ 15        The court denied defendant's motion to reduce his sentence.

¶ 16        This appeal followed.

¶ 17                                II. ANALYSIS

¶ 18        Defendant argues on appeal that (1) the trial court relied on improper sentencing

- 6 -

factors at his sentencing hearing, (2) the court's errors had the cumulative effect of denying defendant a fair hearing, and (3) defendant is entitled to additional *per diem* monetary credit against court-assessed fines.

¶ 19                                            A. Sentencing

¶ 20            As stated, defendant argues the trial court considered improper sentencing factors. Specifically, defendant contends the court considered aggravating factors that were inherent in his drug offense—namely, that the court considered compensation for the drug transaction and the resulting harm to society. Further, defendant contends the court failed to consider factors in mitigation, including "the effect of prison on [defendant's] health" and that his "conduct was induced by another person." Defendant maintains the court's alleged errors had the cumulative effect of denying him a fair sentencing hearing.

¶ 21            Defendant concedes he failed to raise his claims in a postjudgment motion regarding the court's allegedly improper consideration of sentencing factors. See *People v. Smith*, 2016 IL 119659, ¶ 38, 76 N.E.3d 1251. He maintains, however, that his forfeiture may be excused under both prongs of the plain-error doctrine.

¶ 22            "The initial step under either prong of the plain-error doctrine is to determine whether the claim presented on review actually amounts to a 'clear or obvious error' at all." *People v. Harvey*, 2018 IL 122325, ¶ 15, 115 N.E.3d 172 (citing *People v. Staake*, 2017 IL 121755, ¶ 33, 102 N.E.3d 217). "[S]entencing errors raised for the first time on appeal are reviewable as plain error if (1) the evidence was closely balanced or (2) the error was sufficiently grave that it deprived the defendant of a fair sentencing hearing." *People v. Ahlers*, 402 Ill. App. 3d 726, 734, 931 N.E.2d 1249, 1256 (2010).

¶ 23 Recently, in *People v. Johnson*, 2019 IL 122956, ¶ 57, our supreme court held that "a defendant who enters into a negotiated plea agreement may not challenge his sentence on the basis that the court relied on improper statutory sentencing factors." In that case, the defendant entered into a negotiated plea agreement where the State agreed to dismiss certain counts and cap its sentence recommendation on the remaining charges. *Id.* ¶ 4. The trial court sentenced the defendant within the sentencing range under the plea agreement. *Id.* The defendant *pro se* subsequently filed a motion to reduce his sentence, and he was later granted leave to file an amended motion to withdraw his plea. *Id.* ¶ 12. The trial court denied the defendant's motions. *Id.* ¶ 14. On appeal, defendant argued that "he need not withdraw his plea where the trial court erred in sentencing him" because the court allegedly relied on two improper statutory aggravating factors inherent in his drug offense, including the harm caused by his conduct and the compensation he received for committing the offense. *Id.* ¶ 16. The supreme court in *Johnson* noted that, in the appellate court, the "defendant abandoned any claim that the trial court erred in denying his motion to withdraw ***." *Id.* The court further noted that the defendant's recourse under Rule 604(d) was to seek to withdraw the plea and return the parties to the status quo. *Id.* ¶¶ 47, 57.

¶ 24 Instead, the court explained, the defendant had "chosen to abandon any argument on appeal with respect to the withdrawal of his plea." *Id.* ¶ 47. The defendant in *Johnson* attempted to sidestep Rule 604(d)'s requirements by claiming he was not challenging his sentence as excessive. *Id.* ¶ 36. He maintained that his "challenge [was] one of constitutional dimension that implicate[d] due process" because the trial court improperly relied on certain statutory factors in aggravation. *Id.* Our supreme court found that this was a "distinction without a difference" and the defendant's argument "would allow almost every sentencing challenge in a criminal case to be

- 8 -

restated in a constitutional due process framework ***." *Id.* ¶ 41. The court stated that the defendant was seeking to "retain the State's [sentencing] concession while freely challenging his sentence." *Id.* ¶ 46 (citing *People v. Diaz*, 192 Ill. 2d 211, 224, 735 N.E.2d 605, 611 (2000)). The court explained the defendant's plea was entered "with the full knowledge that he could receive a sentence within the cap[,]" he avoided a harsher punishment while receiving the certainty of a lower sentencing range, and "[t]he sentence imposed was within the terms of the bargain ***." *Id.* ¶ 45. The court concluded that, after entering into a negotiated plea agreement, a defendant may not challenge his sentence by claiming that the trial court relied on "improper statutory sentencing factors." *Id.* ¶ 57.

¶ 25    Here, like the defendant in *Johnson*, defendant in the instant case entered into a negotiated guilty plea, the trial court sentenced him within the range contemplated by the plea agreement, and defendant now maintains on appeal that the trial court relied on improper sentencing factors. As discussed, our supreme court has rejected this argument where a defendant enters into a negotiated plea agreement and later attempts to challenge his sentence based on the trial court's allegedly improper consideration of sentencing factors. See *id.* ¶ 57. Further, the court in *Johnson* stated that, "[u]nder Rule 604(d), a defendant's recourse is to seek to withdraw the guilty plea and return the parties to the status quo before the plea." *Id.*; see also Ill. S. Ct. R. 604(d) (eff. July 1, 2017) ("No appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, files a motion to withdraw the plea of guilty and vacate the judgment.").

¶ 26    At our request, the parties submitted supplemental briefing to address the impact of *Johnson* on this case. In his brief, defendant concedes he is foreclosed by *Johnson* from arguing

the trial court considered improper sentencing factors, but asserts he is not foreclosed from arguing "that he did not receive the benefit of his bargain when the trial court altered the terms of his plea agreement when it deprived him of his constitutional right to a fair sentencing hearing." The State responds stating "defendant cites no authority for the principal [*sic*] that a court's error in sentencing violates a defendant's due process rights." The State argues defendant has essentially maintained his original argument on appeal but now (post-*Johnson*) attempts to characterize it as a violation of his due process rights. We agree with the State's description of defendant's argument and further reject defendant's argument that he has demonstrated a violation of his due process rights. Here, defendant was not denied the benefit of his bargain where the court sentenced him to a prison term that was shorter than the promised cap of 15 years. Whether or not the court considered improper sentencing factors in arriving at its sentence is simply irrelevant to a benefit-of-the-bargain analysis.

¶ 27 We find that defendant in this case failed to file a motion to withdraw his guilty plea as required under Rule 604(d) and, pursuant to *Johnson*, we may not consider on appeal defendant's claim that the trial court relied on improper sentencing factors when it sentenced him.

¶ 28 B. *Per Diem* Credit

¶ 29 Defendant next argues he is entitled to an additional $10 of *per diem* credit against his fines. The State concedes the issue.

¶ 30 During the pendency of this appeal, in March 2019, Illinois Supreme Court Rule 472 became effective. Ill. S. Ct. R. 472 (eff. Mar. 1, 2019). Rule 472 provides a mechanism for correcting certain sentencing errors. In pertinent part, Rule 472 states that the trial court retains jurisdiction to correct sentencing errors "at any time[,] *** including during the pendency of an

appeal ***." Ill. S. Ct. R. 472(a) (eff. Mar. 1, 2019). This includes "[e]rrors in the application of *per diem* credit against fines[.]" Ill. S. Ct. R. 472(a)(2) (eff. Mar. 1, 2019). Rule 472 further provides that no appeal may be taken based on such an error "unless [the] error has first been raised in the [trial] court." Ill. S. Ct. R. 472(c) (eff. Mar. 1, 2019).

¶ 31　　　　Subsequently, in May 2019, Rule 472 was amended as follows: "In all criminal cases pending on appeal as of March 1, 2019, *** in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the [trial] court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. May 17, 2019). Accordingly, pursuant to Rule 472, we remand the matter to allow defendant the opportunity to file a motion in the trial court raising the alleged error with respect to the application of *per diem* credit.

¶ 32　　　　　　　　　　　　III. CONCLUSION

¶ 33　　　　For the reasons stated, we affirm in part, and we remand the matter to the trial court to allow defendant the opportunity to file a motion to correct an alleged error regarding the *per diem* credit.

¶ 34　　　　Affirmed in part; remanded with directions.