2018 IL App (1st) 151307

No. 1-15-1307

Opinion filed March 22, 2018

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 11 CR 15655 |
| DARIONTE JONES, | ) ) ) | The Honorable Michele McDowell Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1     After a bench trial, defendant Darionte Jones was found guilty of one count of predatory criminal sexual assault and sentenced to 10 years in the Illinois Department of Corrections (IDOC). The conviction stems from the sexual assault of a 12-year-old victim on August 30, 2011, when defendant was 17 years old. On appeal, defendant does not challenge the sufficiency of the evidence against him.

¶ 2     Defendant claims (1) that his trial counsel was ineffective for failing to move to dismiss the charges against him after the State allegedly failed to bring him to trial within the

period required by section 103-5(a) of the Code of Criminal Procedure of 1963 (Speedy Trial Act) (725 ILCS 5/103-5(a) (West 2012)); (2) that, as applied to defendant, the statute governing predatory criminal sexual assault is harsh and violates the cruel and unusual punishment clause of the eighth amendment, as well as the proportionate penalties clause; and (3) that the trial court abused its discretion by sentencing defendant to 10 years, in light of the fact that he was 17 years old at the time of the offense, had only one prior juvenile adjudication for a nonviolent offense, and expressed remorse at sentencing.

¶ 3      For the following reasons, we affirm his conviction and sentence.

¶ 4                              BACKGROUND

¶ 5      On this appeal, defendant does not raise any claims concerning any of the evidence introduced at trial, or the sufficiency of the evidence, or any arguments made by the State concerning the evidence. Thus, we provide below only the facts needed to understand the claims before us.

¶ 6      At trial, the State's evidence showed that defendant, who was a school friend of the victim's sister, knocked on the door of the victim's home and the victim let him in. The 12-year-old victim returned to her bedroom to continue watching "Sponge Bob" on television when defendant entered, sat down next to her on the bed, and began kissing her. After the victim told him to stop, he pushed her back on the bed, laid on top of her, and pulled down her pants and underwear. His penis then made contact with her vagina.[1] When the victim heard the door open, she observed defendant run into the closet holding his clothes. When the victim's sister walked into the bedroom, the sister observed the victim on the bed without

_____

[1]As we note later when we describe the trial court's factual findings, the trial court found that defendant's penis made contact with the victim's vagina but that the State had failed to prove beyond a reasonable doubt that it intruded into the vagina.

pants or underwear and found defendant in the closet wearing a shirt but no pants. The sister told him to leave and he did. The sister then told their mother what happened, and the next day the mother and sister told the victim's father who took the victim and her sister to the police station. Three days after the attack, a nurse examined the victim and observed, during the genital exam, redness, irritation, and a microabrasion, which was consistent with sexual assault. A sexual assault kit was performed and was negative for the presence of semen.

¶ 7    As noted, the trial court found defendant guilty of one count of predatory criminal sexual assault of a child. Prior to announcing the verdict, the trial court made specific findings of fact, including that "the State has not presented enough evidence for proof beyond a reasonable doubt" (1) that "the defendant committed an intrusion of his penis into the vagina" of the victim, (2) that "there was any force" or threat of force "in this matter," or (3) that "there was unlawful restraint." The trial court did find that "the State has proven beyond a reasonable doubt that there was contact between the defendant's penis and [the victim's] vagina," and "that the defendant knew that the victim *** was under 13 years of age." As a result, the court found "there will be a finding of guilty with regards to *** contact between the penis and the vagina of [the victim] with her being under 13 years of age"

¶ 8    Defendant filed a posttrial motion for a new trial that raised claims concerning the sufficiency of the evidence and the admissibility of certain pieces of evidence. However, the posttrial motion did not assert any of the issues raised on appeal.

¶ 9    At the sentencing on April 9, 2015, the trial court denied defendant's posttrial motion and then heard factors in aggravation and mitigation. In mitigation, defense counsel observed, among other things, that defendant was then presently 20 years old and the father

3

of a 5-year-old and a 4-year-old. The factors in mitigation included the following statement by defendant. On appeal, defendant argues that this statement shows remorse, so we provide it here in full:

> "DEFENDANT: I'm here today because, you know I made some wrong actions down the line and I do take full responsibility of everything that has happened. I just ask that you have lenience because I do have two children.
>
> I made a mistake that should never have been made. I am sorry for what I did. Sorry for what other people have been through. That's it."

¶ 10    After listening to defendant's statement, the trial court sentenced him to 10 years with IDOC. Since defendant claims on appeal that the trial court abused its discretion by sentencing him to 10 years instead of the six-year minimum, we provide here the trial court's full statement explaining its reasons for selecting a 10-year sentence:

> "THE COURT: All right. Thank you, sir.
>
> Well, this Court having entered a judgment on the finding of guilt with regards to Count 1, predatory criminal sexual assault of a child, that being a Class X felony which carries a mandatory penitentiary sentence of between 6 to 60 years of incarceration in the Illinois Department of Corrections, I have considered the facts of this case, all of the matters in aggravation and mitigation.
>
> The Court has also thoroughly read the Pre-Sentence Investigation Report noting that the defendant's first contact with the law was at 13 years of age for a felony offense of burglary in juvenile court. That was dismissed, but that's the defendant's first contact with the law.

Second contact was a residential burglary where [the trial court] found the defendant guilty—there was a finding of delinquency for a residential burglary, which is a Class 1 felony. He received five years juvenile probation, 150 hours of community service. He received some TASC as well.

And a violation of probation was filed in June of 2008 and a sex evaluation was ordered. And that is State's Exhibit No. 1, which was prepared for [the trial court] apparently July 28th of 2008.

The defendant apparently did not comply further with probation and his juvenile court judge sent him to the Illinois Department of Corrections as a juvenile. He was sentenced to IYC, which is the Juvenile Illinois Department of Corrections.[2] That was in October of 2009.

The State comments about numerous or lengthy criminal histories. These cases have all been dismissed, so the only one the Court is acknowledging basically is the residential burglary where the defendant was found delinquent and sent to the Illinois Youth Department of Corrections.

This case in which this Court found the defendant guilty of predatory criminal sexual assault happened in 2011. He was sent to IYC October 15th of '09. So a little less than two years after he was sentenced as a juvenile to the Department of Corrections, he commits this Class X felony upon a very unsuspecting 12 year old girl who he knew from the neighborhood, he knew her sister, and he committed an act of sexual contact with her.

---

[2]The presentence investigation report states that, when defendant was "16, he was sent to the Illinois Youth Center in St. Charles." However, the report does not indicate the length of time he spent there.

The Court has read the PreSentence Investigation Report. The defendant does not have any adult criminal history. He has completed only two years of high school. The defendant has no job history. He has two children.

The Court finds based upon the aggravation, the mitigation that this Court has heard, the findings that the Court made, the Court finds that the following sentence is appropriate in this matter. This is a Class X felony as indicated where a sentencing range is between 6 to 60 years.

The Court finds that the sentence that is appropriate for this matter is a period of incarceration of 10 years in the Illinois Department of Corrections.

Based upon this sentencing range, based upon this Class X felony and the facts of this case, the Court does not find that 6 years is an appropriate sentence in this matter. The Court does not find that the maximum sentence is appropriate either. Ten years, which must be served at 85 percent, is an appropriate sentence for this offense of predatory criminal sexual assault."

We observe that 10 years, if served at 85%, is 8½ years. The trial court then found that "[c]redit for 1,316 days will be given to the defendant." This credit, if served at 85%, is over four years. The sentencing on April 9, 2015, was almost three years ago.[3]

¶ 11     Defendant then filed a motion to reconsider his sentence that claimed, among other things, that his sentence was "excessive in view of the Defendant's background and the nature of his participation in the offense." Before the trial court, defense counsel explained that she was challenging only the portion of the sentence that exceeded the minimum of six

---

[3]An inmate search on IDOC's website showed that defendant was still incarcerated with IDOC as of February 14, 2018. See Offender Search, Illinois Department of Corrections, https://www2.illinois.gov/idoc/offender/pages/inmatesearch.aspx (last visited Feb. 14, 2018).

years. Thus, defendant did not raise before the trial court an issue that he raises on appeal, namely, that his conviction should be reduced to a Class A misdemeanor and that he should be sentenced to less than a year.

¶ 12        With respect to the motion to reconsider sentence, the following colloquy occurred:

"THE COURT: Do you have a motion to file, counsel?

DEFENSE COUNSEL: Yes, Your Honor. To avoid—

THE COURT: A motion to reconsider?

DEFENSE COUNSEL: Yes. To avoid returning in 30 days, I'm asking the Court to reconsider the sentence. The same arguments that I presented in my mitigation regarding the excessive nature of anything greater than 6 years.

THE COURT: State, your response?

ASSISTANT STATE'S ATTORNEY [(ASA)]: Your Honor, the sentence is appropriate given the facts.

THE COURT: I'm sorry.

ASA: The sentence is appropriate given the facts.

THE COURT: All right. The defendant's motion to reconsider sentence is denied. The sentencing range is 6 to 60 years. The Court does not find that the 10-year sentence is excessive, therefore, counsel your motion is going to be denied.

[Defendant], any questions about your sentence, sir?

DEFENDANT: No."

Defendant then filed a timely notice of appeal, and this appeal followed.

¶ 13    On appeal, the State Appellate Defender (SAD) filed four requests to extend the time to file the record, all of which we granted—thereby providing an eight-month period of time to file a record. Then the SAD waited two more months to file a certificate in lieu of record. The SAD then filed four requests to extend the time to file defendant's initial brief, all of which we granted—covering an additional 11-month period of time. We also granted defendant's subsequent motion to cite additional authority.

¶ 14    After filing defendant's brief, the SAD *then* filed a motion to expedite the briefing schedule, which we denied because of its conduct in taking 11 months to file a brief. We then granted the State the same four extensions to file its brief that we had granted the defense which came to six months. In addition, we granted the SAD an extension to file its reply brief that we marked "final." The word "final" means that no further extensions would be allowed. Thus, we initially denied the second request for more time to file a reply brief because the underlying offense in this case occurred on August 30, 2011, almost 7 years ago, and defendant is serving a 10 year sentence. We agree with the SAD on the need to decide this appeal expeditiously and, thus, we acted promptly to issue an opinion after receipt of a thorough brief from each side. However, we did grant defendant's motion to file the reply brief *instanter* for reasons discussed below. *Supra* ¶ 28.

¶ 15                                        ANALYSIS

¶ 16    On appeal, defendant claims (1) that his trial counsel was ineffective for failing to move to dismiss the charges against him after the State allegedly failed to bring him to trial within the period required by the Speedy Trial Act (725 ILCS 5/103-5(a) (West 2012)); (2) that, as applied to defendant, the statute governing predatory criminal sexual assault is harsh and violates the cruel and unusual punishment clause of the eighth amendment, as well as the

proportionate penalties clause; and (3) that the trial court abused its discretion by sentencing defendant to 10 years, in light of the fact that he was 17 years old at the time of the offense, had only one prior juvenile adjudication for a nonviolent offense, and expressed remorse at sentencing.

¶ 17     For the following reasons, we affirm his conviction and sentence.

¶ 18                    I. Speedy Trial Act

¶ 19     Defendant's first claim is that his trial counsel was ineffective for failing to move to dismiss the charges against him after the State allegedly failed to bring him to trial within the 120-day period required by the Speedy Trial Act (725 ILCS 5/103-5(a) (West 2012)).[4]

¶ 20     To determine whether a defendant was denied the effective assistance of counsel, we apply the well-known test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (adopting the *Strickland* test). Under *Strickland*, a defendant must show both that (1) his counsel's performance was deficient and (2) his counsel's deficient performance prejudiced him. *People v. Cordell*, 223 Ill. 2d 380, 385 (2006).

¶ 21     However, "[t]he failure of counsel to argue a speedy-trial violation cannot satisfy either prong of *Strickland* where there is no lawful basis for arguing a speedy-trial violation." *Cordell*, 223 Ill. 2d at 385; see also *People v. Staake*, 2017 IL 121755, ¶ 47 ("Counsel's failure to assert a speedy-trial violation cannot establish either prong *** if no speedy-trial violation occurred."); *People v. Phipps*, 238 Ill. 2d 54, 65 (2010) ("Counsel's failure to assert

---

[4]A defendant has both a constitutional and a statutory right to a speedy trial; they are not coextensive. *People v. Staake*, 2017 IL 121755, ¶ 32; *People v. Cordell*, 223 Ill. 2d 380, 385-86 (2006). However, in the case at bar, defendant argues only a statutory violation.

a speedy-trial violation cannot establish either prong *** if there is no lawful basis for raising a speedy-trial objection.").

¶ 22    Thus, we must determine, first, "whether defendant's speedy-trial rights were violated *before* we can determine whether counsel was ineffective." (Emphasis added.) *Cordell*, 223 Ill. 2d at 385; see also *Phipps*, 238 Ill. 2d at 65 ("we must first determine whether defendant's right to a speedy trial was violated").

¶ 23    In the case at bar, since defendant raises the alleged speedy-trial violation for the first time on appeal, there are no factual findings made by the trial court for this court to review. In addition, the question of what the Speedy Trial Act requires is a legal question, which this court reviews *de novo*. *People v. Van Schoyck*, 232 Ill. 2d 330, 335 (2009) (whether the defendant's statutory speedy-trial rights "were contravened is a pure question of law, which this court reviews *de novo*"); *Cordell*, 223 Ill. 2d at 389 ("The construction of a statute is a question of law reviewed *de novo*."). *De novo* consideration means that we perform the same analysis that the trial court would perform. *People v. Melecio*, 2017 IL App (1st) 141434, ¶ 42.

¶ 24    The primary goal of a court in construing a statute is to ascertain and give effect to the intent of the legislature. *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 411 (1997); *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96 (1990) (the "fundamental" rule is "to ascertain and give effect to the intent of the legislature"). A court will first ascertain the intent of the legislators from the plain language of the statute itself. *East St. Louis*, 178 Ill. 2d at 411-12. We also consider "the entire Act, its nature, its object and the consequences" of "construing it one way or the other." *Fumarolo*, 142 Ill. 2d at 96.

¶ 25        Section 103-5 provides in relevant part:

"Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he [or she] was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2012).

¶ 26        The last line quoted above, requiring a defendant to make a written or oral demand for trial, was added in 1999. *Cordell*, 223 Ill. 2d at 386. Thus, any cases decided before 1999, any cases decided based on the 1999 statute, or any cases that relied primarily on pre-1999 cases are simply not relevant to a present determination about whether a delay was agreed to by a defendant. *Cordell*, 223 Ill. 2d at 392 (finding that a 2000 appellate court opinion was not relevant because it "never addressed the amended statute").

¶ 27        As a result of the 1999 amendment, we must consider any delay to be agreed to by a defendant "unless he or she object[ed] to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2012). Interpreting the 1999 amendment, our supreme court has held that it requires a defendant to make a demand for trial *after* the delay is proposed. *Cordell*, 223 Ill. 2d at 391. A prior demand by defendant for trial is not enough to qualify as an objection. *Cordell*, 223 Ill. 2d at 391. Our supreme court explained why:

"As amended, section 103-5(a) places the onus on a defendant to take affirmative action when he becomes aware that his trial is being delayed. To allow basic requests for trial, made before any delay was even proposed, to qualify as objections to

'delays' not yet proposed would provide defendants with another sword to use after the fact to overturn their convictions. This does not comport with the intent of section 103-5(a)." *Cordell*, 223 Ill. 2d at 391-92.

Thus, to qualify as an objection, there must be, first, a proposed delay and then a written or oral demand for trial by the defense.

¶ 28    In the case at bar, the State cited *Cordell* in its response brief but defendant failed to discuss *Cordell* in his opening brief and failed to discuss it in his reply brief, even though we permitted defendant to file his reply brief late.

¶ 29    Defendant concedes that most of the time between his arrest and his trial was excluded from the speedy-trial clock. However, he claims that, even with most of the time excluded, there were still 152 days that counted and that this 152 days is far more than the 120 days that the statute permits.

¶ 30    In response, the State argues that there was a 36-day period, counted by defendant, that should be excluded because defendant acquiesced. Thus, it is only this 36-day period— between August 14, 2013, and September 19, 2013—that is disputed by the parties on appeal.

¶ 31    While the amendment "does not mandate any 'magic words' constituting a demand for trial," it does require "some affirmative statement in the record requesting a speedy trial." (Emphasis omitted.) *Phipps*, 238 Ill. 2d at 66. "[T]he provisions of section 103-5 are to be liberally construed in favor of the defendant, and *** the State cannot improperly manipulate criminal proceedings or purposefully evade the operation of the section's provisions." *Van Schoyck*, 232 Ill. 2d at 335.

¶ 32    The 36-day period under dispute began to run on August 14, 2013. On July 10, 2013, the prior court date, a pretrial hearing was continued by agreement to August 14, 2013. The hearing concerned a motion filed by the State to allow certain hearsay testimony.

¶ 33    On August 14, 2013, the State informed the court that its witnesses were still unavailable, and the court stated that "[t]he record is going to reflect the State's not ready." The trial court then asked defense counsel what her position was, and defense counsel responded, "Well, [the prosecutor] did advise me this morning as to the unavailability of the witnesses, so …" The court then stated, "The matter is going to continue, motion State."

¶ 34    On appeal, defendant argues that the court's ruling that the State was not ready and that the hearing was continued on the State's motion show that this time was attributable to the State, not defendant. However, the transcript shows that the parties continued to discuss rescheduling the hearing for over a page and not once during this extended discussion did defense counsel assert a demand for trial as the amended statute explicitly requires.

¶ 35    While no " 'magic words' " are required, "some affirmative statement" is required to assert a trial demand under the amended statute, and defense counsel failed to utter any words resembling a trial demand before the court ruled or during the subsequent discussion about rescheduling. *Phipps*, 238 Ill. 2d at 66; see also 725 ILCS 5/103-5(a) (West 2012) (requiring "a written demand for trial or an oral demand for trial on the record"). Thus, this 36-day period was excluded from the speedy-trial clock, and no speedy-trial violation occurred.

¶ 36    In addition, defense counsel's statements after the trial court's ruling could be interpreted as agreeing.  While we do not rest our opinion on this point, we cite it only as some additional support for our finding:

"THE COURT:  The matter is going to continue, motion State.

ASA:  That's fine, Judge.

THE COURT:  It's going to be final for [the hearing].

ASA:  All right.

THE COURT:  It will be the fourth hearing date.

ASA:  We were looking at Thursday, September 5th as a possible date.

DEFENSE COUNSEL:  Judge, just for the record with regard to that day, that's my trial, that's here, the attempt—

THE COURT:  No, I have three matters set.  *** I have attempt murder, home invasion, and murder all set[] for that day for hearing.

DEFENSE COUNSEL:  The other day we talked [about] was the 19th.

THE COURT:  I'll be on a jury that week, but just in case?

DEFENSE COUNSEL:  It's a murder.

THE COURT:  Yes.

DEFENSE COUNSEL:  It starts on Monday?

THE COURT:  Yes, [name of another defendant]. Aren't you on that?

ASA:  No.

DEFENSE COUNSEL:  Yeah, the 19th?

THE COURT:  You're backup, so I'll know Monday.  I'm due to pick that day.

ASA:  I understand.

THE COURT:  So that's not the best week. That has two private counsels *** and I'm definitely due to pick that Monday.

14

ASA: I wa[s] aware of that, Judge. I'm just seeking to do it as a backup if for some reason it's not ready.

THE COURT: As a backup. Counsel, do you wish that?

DEFENSE COUNSEL: Yes.

THE COURT: Motion State, Thursday 9/19/2013, 11:00, setting the matter down for hearing on the *** motion marked final. If I'm not on jury trial—by Monday you will know, and you can call off your witnesses. If I'm not on Monday, then it will proceed on Thursday.

ASA: All right. Thank you.

THE COURT: So you have to be a backup if you wish that day. I do have a murder jury that week.

All right. September 19th, [defendant], 11:00 is your next date."

The reason that we do not rest our opinion on this point is that we do not want to mislead either trial courts or counsel on what is required. What is now required is an affirmative demand for trial. 725 ILCS 5/103-5(a) (West 2012) (requiring "a written demand for trial or an oral demand for trial on the record"). The whole point of the amended statute is to remove any need for courts to scour the record to determine whether defense counsel implicitly or arguably did or did not agree. *Cordell*, 223 Ill. 2d at 391-92. Only an affirmative demand for trial, in writing or on the record, will do. 725 ILCS 5/103-5(a) (West 2012). However, the above quote does show that defense counsel stated no words resembling a trial demand during the ensuing discussion about scheduling and dates.

¶ 37          Without a speedy-trial violation, there can be no ineffective assistance claim on this basis. As noted above, "[t]he failure of counsel to argue a speedy-trial violation cannot

15

satisfy either prong of *Strickland* where there is no lawful basis for arguing a speedy-trial violation." *Cordell*, 223 Ill. 2d at 385. As a result, we do not find this claim persuasive.

¶ 38    Defendant does not claim that his counsel was ineffective for failing to assert a trial demand on August 14, 2013, nor could he on the record before us. The speedy-trial clock was not about to run out on August 14, 2013, and the record provides no clue as to whether counsel had her own strategic reasons for not objecting to the delay. Defendant claims on appeal only that his counsel was ineffective for failing to move to dismiss his case once the speedy-trial clock had already run. However, as we already explained above, this claim does not satisfy the statute.

¶ 39    While this appeal was pending, defendant filed a motion to cite *People v. Dalton*, 2017 IL App (3d) 150213, as additional authority, which this court granted. However, *Dalton* presents a different factual situation and a different issue than the case at bar. In *Dalton*, the State charged defendant on December 30, 2003, with aggravated criminal sexual abuse. *Dalton*, 2017 IL App (3d) 150213, ¶ 3. On May 17, 2004, which was more than 120 days after the original charges were filed, the State filed an amended information adding a count that was based on the same physical act, but that charged the greater offense of criminal sexual assault. *Dalton*, 2017 IL App (3d) 150213, ¶ 4.

¶ 40    In *Dalton*, the appellate court found that the trial counsel was ineffective for failing to move to dismiss the additional charge. The *Dalton* court explained that, once a defendant is charged, he "must be tried within 120 days not only for" the charged offense "but also for any other offenses that could be charged based on the same underlying act." *Dalton*, 2017 IL App (3d) 150213, ¶ 21. "Because both counts were based on the same physical act," the defendant's right to a speedy trial was violated at the very moment that "the State filed the

additional charge, more than 120 days after filing the original charges." *Dalton*, 2017 IL App (3d) 150213, ¶ 23. The *Dalton* court found that there was "no strategic reason for trial counsel to fail to move to dismiss a charge" that was already in violation of the "defendant's right to a speedy trial." *Dalton*, 2017 IL App (3d) 150213, ¶ 28.

¶ 41 In the case at bar, the speedy-trial clock had not expired on August 14, 2013, when the disputed 36-day period began or at any other time prior to trial. Thus, *Dalton* does not apply here.

¶ 42 For all the foregoing reasons, we do not find defendant's speedy-trial claim persuasive.

¶ 43 II. Eighth Amendment and Proportionate Penalties Clause

¶ 44 Defendant claims that (1) the registration and notification laws applicable to sex offenders and (2) the statutory scheme that resulted in his 10-year sentence violate the federal constitution's prohibition against cruel and unusual punishment (U.S. Const., amend. VIII), as well as the Illinois Constitution's proportionate penalties clause (Ill. Const. 1970, art. I, § 11). Defendant does not claim that these laws are facially invalid but only that they are invalid as applied to him.

¶ 45 Defendant asks this court to reduce his offense from predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a) (West 2010)) to the Class A misdemeanor of criminal sexual abuse (720 ILCS 5/11-1.50(b), (d) (West 2010)). Predatory criminal sexual assault of a child has a sentencing range of 6 to 60 years (720 ILCS 5/11-1.40(b)(1) (West 2010)), while the misdemeanor offense carries only a sentence of less than one year (720 ILCS 5/11-

1.50(d) (West 2010)). Defendant argues that, since he has already served more than the maximum possible sentence for a Class A misdemeanor, no resentencing is necessary.[5]

¶ 46        For the following reasons, we do not find defendant's claim persuasive.

¶ 47                            A. As-Applied Challenge

¶ 48        Defendant raises only an as-applied challenge. "An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party." *People v. Thompson*, 2015 IL 118151, ¶ 36. "In contrast, a facial challenge requires a showing that the statute is unconstitutional under any set of facts, *i.e.*, the specific facts related to the challenging party are irrelevant." *Thompson*, 2015 IL 118151, ¶ 36. "By definition, an as-applied constitutional challenge is dependent on the particular circumstances and facts of the individual defendant or petitioner. Therefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Thompson*, 2015 IL 118151, ¶ 37. Usually, "the trial court is the most appropriate tribunal for the type of factual development necessary" for an as-applied challenge. *Thompson*, 2015 IL 118151, ¶ 38.

¶ 49        Although defendant raises this as-applied challenge for the first time on appeal, he argues that he may raise an as-applied challenge to a statute at any time. In support, he cites the Illinois Supreme Court's decision in *People v. McCarty*, 223 Ill. 2d 109, 123 (2006). However, the Illinois Supreme Court in *Thompson* distinguished this same case when a defendant tried making the same argument based on it. *Thompson*, 2015 IL 118151, ¶ 40. In

---

[5]Defendant also asks this court to reduce his conviction pursuant to this court's authority under Illinois Supreme Court Rule 615(b)(3), which permits a reviewing court to "reduce the degree of the offense of which the appellant was convicted." We discuss this claim in the next section.

*Thompson*, our supreme court observed that the *McCarty* decision did not "even involve[ ] an as-applied constitutional challenge." *Thompson*, 2015 IL 118151, ¶ 40.

¶ 50    However, the State does not claim on appeal that defendant forfeited his claim by failing to raise it in the court below. The State may forfeit a claim of forfeiture by failing to raise it. *E.g.*, *People v. Bridgeforth*, 2017 IL App (1st) 143637, ¶ 46 ("The rules of waiver also apply to the State, and where, as here, the State fails to argue that defendant has forfeited the issue, it has waived the forfeiture."). Thus, we will consider defendant's claim.

¶ 51    Since the trial court never addressed this claim, there is no ruling by the trial court for us to review, and our review is by its very nature *de novo*. *De novo* review means that we will perform the same analysis that a trial court would perform. *Xcel Supply LLC v. Horowitz*, 2018 IL App (1st) 162986, ¶ 38. "A statute is presumed constitutional, and the party challenging the statute bears the burden of demonstrating its invalidity." *People v. Malchow*, 193 Ill. 2d 413, 418 (2000). A court has "a duty to construe a statute in a manner that upholds its validity and constitutionality if it can be reasonably done." *Malchow*, 193 Ill. 2d at 418.

¶ 52                    B. Registration and Notification Laws

¶ 53    Defendant claims first that the registration and notification laws applicable to sex offenders violate both the federal constitution's prohibition against cruel and unusual punishment (U.S. Const., amend. VIII), and the Illinois Constitution's proportionate penalties clause (Ill. Const. 1970, art. I, § 11), as applied to him. However, as the State argues, these laws do not constitute punishment for constitutional purposes. "Only governmental action that inflicts 'punishment' may be restricted by the eighth amendment and the proportionate penalties clause." *People v. Avila-Briones*, 2015 IL App (1st) 132221, ¶ 46; *People v.*

*Gipson*, 2015 IL App (1st) 122451, ¶ 70 ("the eighth amendment" and "the proportionate penalties clause" do "not apply unless a penalty has been imposed").

¶ 54    Defendant challenges, as applied to him, the Illinois Sex Offender Registration Act (Registration Act) (730 ILCS 150/1 *et seq.* (West 2010), which requires him to register as a sex offender with local law enforcement officials, and the Illinios Sex Offender Community Notification Law (Notification Law) (730 ILCS 152/101 *et seq.* (West 2010)), which requires state police to maintain a sex offender database for the purpose of identifying sex offenders and making information about them available to persons specified in the statute and to the public. See generally *People v. Cornelius*, 213 Ill. 2d 178, 181-83 (2004) (describing the two statutes); *Malchow*, 193 Ill. 2d at 416-18 (describing the two statutes).

¶ 55    However, our supreme court has found that neither of these statutes are punitive in nature. With respect to the Registration Act, our supreme court has stated "it is worth repeating that sex offender registration is not punishment." *People v. Cardona*, 2013 IL 114076, ¶ 24; *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 203 (2009) ("This court has repeatedly held, though, that the [Registration] Act's requirements do not constitute punishment."); *Malchow*, 193 Ill. 2d at 419 ("requiring sex offenders to register is not punishment"). "Rather, it is a regulatory scheme designed to foster public safety." *Cardona*, 2013 IL 114076, ¶ 24; *Birkett*, 233 Ill. 2d at 203 ("Rather, the [Registration] Act is a regulatory statute intended to foster public safety."). "The category 'sex offender' is entirely a creature of statute, and there are several ways a person can acquire that label, only one of which is criminal conviction of a triggering offense." *Cardona*, 2013 IL 114076, ¶ 25. Similarly, with respect to the Notification Law, our supreme court has found that it did not constitute punishment. *Malchow*, 193 Ill. 2d at 424 ("the Notification Law does not constitute

punishment"); see also *Cornelius*, 213 Ill. 2d at 205 ("the primary purpose of the Registration Act and Notification Law is to assist law enforcement and to protect the public").

¶ 56    For example, in *Malchow*, the defendant contended "that the Registration Act and the Notification Law disadvantage him because they increase the punishment for previously committed offenses." *Malchow*, 193 Ill. 2d at 419. Our supreme court observed that "[r]esolution of this contention turns on the question of whether the provisions of the Registration Act and the Notification Law constitute punishment." *Malchow*, 193 Ill. 2d at 419. The supreme court observed that neither the Registration Act nor the Notification Law constituted punishment for purposes of the *ex post facto* clause. *Malchow*, 193 Ill. 2d at 419, 424 ("the requirements of the Notification Law are nonpunitive"); see also *Cornelius*, 213 Ill. 2d at 209 (the Notification Law did not violate "the *ex post facto* provisions of the United States or Illinois constitutions"). The court went on to conclude that the Registration Act and the Notification Law also did not violate the eighth amendment's prohibition against cruel and unusual punishment because they simply were not punishment. *Malchow*, 193 Ill. 2d at 424.

¶ 57    Thus, our supreme court has repeatedly rejected the type of claim that defendant makes here, and so must we. *In re A.C.*, 2016 IL App (1st) 153047, ¶¶ 77, 79 (since our supreme court found "no punitive intent" behind the Registration Act and the Notification Law, we must "also reject [the minor] respondent's contentions that he was subjected to cruel and unusual and grossly disproportionate punishment").

¶ 58    We observe that the Third District reached a different finding than we do today. In *People v. Tetter*, 2018 IL App (3d) 150243, ¶ 3, in a 2-to-1 decision, the Third District found that the Registration Act and Notification Law constituted punishment and that the

21

punishment was grossly disproportionate as applied to the defendant in that case. However, the State filed a petition for rehearing in *Tetter* on February 21, 2018, and that petition is still pending. As a result, the Third District's decision is not yet final.

¶ 59        The *Tetter* opinion was based, in part, on an earlier opinion by a different panel of the Third District which held that the statute banning sex offenders from public parks (720 ILCS 5/11-9.4-1 (West 2012) was facially unconstitutional. *People v. Pepitone*, 2017 IL App (3d) 140627, ¶¶ 1, 3. Our supreme court granted a petition for leave to appeal in *Pepitone* almost a year ago, so guidance from our highest court should be forthcoming.

¶ 60        Although the Third District opinion in *Tetter* is not yet final and we hesitate to discuss it for that reason, we address it here for completeness' sake only.

¶ 61        In *Tetter*, the Third District observed that both the Illinois Supreme Court and the United States Supreme Court have found that sex offender registration and notification laws do not constitute punishment. *Tetter*, 2018 IL App (3d) 150243, ¶¶ 43-44. However, the Third District observed that our legislature subsequently passed numerous amendments imposing additional restrictions upon sex offenders, including restrictions on where a sex offender may be present, live, work or move about his community. *Tetter*, 2018 IL App (3d) 150243, ¶ 45. Thus, the Third District found that it was faced with a "very different and more restrictive" set of statutes than those considered by either our supreme court or the United States Supreme Court previously. *Tetter*, 2018 IL App (3d) 150243, ¶ 45.

¶ 62        The Third District concluded that, since these statutes now "stripped" offenders of "freedom of movement," they were now more "akin to probation or supervised release," which is considered punishment. *Tetter*, 2018 IL App (3d) 150243, ¶ 48. "Specifically, 'safe zones' surrounding schools, school bus stops, and public parks, significantly restrict

defendant's lawful movement within the community. These zones restrict where he may live, drive, work, or attend any social function for life. Although not to the same degree as prison, the sex offender statutes' restrictions affirmatively disable and restrain offenders such as defendant." *Tetter*, 2018 IL App (3d) 150243, ¶ 52. The Third District thus concluded that our sex offender statutes now "satisfy the traditional definition of punishment." *Tetter*, 2018 IL App (3d) 150243, ¶ 56. "The traditional aims of punishment are incapacitation, retribution and deterrence." *Tetter*, 2018 IL App (3d) 150243, ¶ 58. The Third District found that the new amendments satisfy these traditional aims, since the legislature implemented them in order to incapacitate convicted sex offenders, as well as to deter future crimes. *Tetter*, 2018 IL App (3d) 150243, ¶¶ 58-59. In conclusion, the Third District found that, given this defendant's "virtually zero risk of recidivism," "his lifetime subjection to the sex offender statutes is grossly disproportionate." *Tetter*, 2018 IL App (3d) 150243, ¶ 80. It then "vacate[d] defendant's subjection to the sex offender statutes' registration requirements and restrictions." *Tetter*, 2018 IL App (3d) 150243, ¶ 80.

¶ 63 As far as this court is aware, the *Tetter* defendant is the only convicted sex offender in the state of Illinois who has been freed from any and all restrictions under either the Registration Act or Notification Law by an appellate court. Even if the Third District was convinced that our legislature's recent amendments were unconstitutional, the Third District did not explain why it chose not to apply the portions of the statutes that our supreme court has already found to be constitutional. If the Third District was convinced that some of the recent amendments were unconstitutional as applied to certain defendants, that finding would leave trial courts with a task, akin to picking through land mines, to decide which restrictions were unconstitutional as applied to which defendants. For example, is a restriction

23

concerning proximity to a school or park unconstitutional as applied to a defendant who lives in a rural area, miles away from any school or park? Does the *Tetter* opinion require an appellate court to make its own recidivism risk assessment of each individual defendant, as the Third District did in the case before it?

¶ 64 Whether we agree or disagree with the reasoning in *Tetter*, we must follow our supreme court's precedent until and unless our supreme court dictates otherwise. Thus, we affirm for the reasons already stated and await further direction from our highest court.

¶ 65 C. Not Cruel and Unusual

¶ 66 Next, defendant claims that the statutory scheme that resulted in his 10-year sentence violates the federal constitution's prohibition against cruel and unusual punishment (U.S. Const., amend. VIII) and the Illinois Constitution's proportionate penalties clause (Ill. Const. 1970, art. I, § 11) as applied to him.

¶ 67 Specifically, defendant argues that if this offense had occurred two months earlier, when defendant was 16 years old, or two months later, when the victim turned 13, it would have been charged as criminal sexual abuse, a Class A misdemeanor with a sentence of less than a year rather than the Class X offense of predatory criminal sexual assault, which resulted in his 10-year sentence.

¶ 68 In support of his claim that his 10-year sentence violates the cruel and unusual punishment clause and the proportionate penalties clause, defendant cites the Illinois Supreme Court case of *People v. Miller*, 202 Ill. 2d 328, 336-41 (2002) and the appellate court case of *Gipson*, 2015 IL App (1st) 122451, ¶¶ 69-78. For the following reasons, we find these cases distinguishable.

¶ 69    In *Miller*, a 15-year-old was charged with two counts of murder based solely upon accountability and transferred to the criminal division to be tried as an adult. *Miller*, 202 Ill. 2d at 330. Following a jury trial, defendant was convicted. *Miller*, 202 Ill. 2d at 330. At sentencing, the trial court refused to impose the statutorily mandated sentence of natural life in prison on the ground that application of the mandatory sentence to this minor defendant would offend the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) and the eighth amendment of the United States Constitution (U.S. Const., amend. VIII). *Miller*, 202 Ill. 2d at 330, 337. On appeal, our supreme court affirmed the trial court, finding the statute unconstitutional as applied to this particular defendant. *Miller*, 202 Ill. 2d at 341. Our supreme court observed that, although this 15-year-old acted only as a lookout and never handled a gun, he was being sentenced as though he was the adult shooter and, thus, sentenced to life with no possibility of parole. *Miller*, 202 Ill. 2d at 340-41. The court found that "this case presents the least culpable offender imaginable, a 15-year-old who had 'about a minute from the time this plan began until the act was completed by other persons.' " *Miller*, 202 Ill. 2d at 341.

¶ 70    In *Gipson*, the defendant, like the defendant in *Miller*, was tried and sentenced as an adult for offenses he committed when he was 15 years old. *Gipson*, 2015 IL App (1st) 122451, ¶¶ 1, 4. After a bench trial, the *Gipson* defendant was found guilty of multiple firearm offenses including attempted first degree murder and sentenced to 52 years in prison, which because of multiple mandatory firearm enhancements, was the minimum available sentence. *Gipson*, 2015 IL App (1st) 122451, ¶¶ 1, 76. On appeal, this court found that defendant's sentence violated the proportionate penalties clause because it "shocks the moral sense of the community." *Gipson*, 2015 IL App (1st) 122451, ¶ 73. In reaching this

conclusion, we stated that "we cannot ignore evidence regarding defendant's mental state." *Gipson*, 2015 IL App (1st) 122451, ¶ 74. We found "it meaningful that defendant had been declared unfit to stand trial before this offense occurred." *Gipson*, 2015 IL App (1st) 122451, ¶ 74. We concluded that "our system failed defendant" and that "defendant's mental health issues were not appropriately addressed." *Gipson*, 2015 IL App (1st) 122451, ¶ 74. Although "the trial court considered defendant's youth and mental disorders," the "sentencing scheme *** did not permit the court to give those factors appropriate weight." *Gipson*, 2015 IL App (1st) 122451, ¶ 75. We found that "the trial court's discretion was frustrated" by the mandatory firearm enhancements. *Gipson*, 2015 IL App (1st) 122451, ¶ 76. These enhancements resulted in a minimum of 52 years for a 15-year-old whose "mental health was questionable at best." *Gipson*, 2015 IL App (1st) 122451, ¶¶ 74-75. We remanded for resentencing, directing the trial court "to impose, on both attempted murder counts, any appropriate Class X sentence ***, without regard to the mandatory enhancement." *Gipson*, 2015 IL App (1st) 122451, ¶ 78.

¶ 71        Both *Miller* and *Gipson* are distinguishable from the case at bar. First, both cases involved 15-year-olds, whereas defendant was 17 years old at the time of the offense. Second, both cases involved natural life or approaching natural life sentences, whereas the sentence in the case at bar was 10 years served at 85%. Third, both *Miller* and *Gipson* involved either mandatory life sentences or mandatory multiple firearm enhancements, which frustrated the judiciary's ability to exercise discretion, whereas in this case the trial court had the ability to and did, in fact, exercise discretion to select a sentence at the low end of a sentencing range. Fourth, unlike *Gipson*, there was no evidence in this case that defendant suffered from a mental health disability. Fifth, in *Gipson*, we determined that a Class X

sentence was appropriate, even though the *Gipson* defendant's mental health was questionable at the time of the offense. Similarly, in the case at bar, defendant was sentenced to a Class X sentence, and received the very low end of the applicable range.

¶ 72    As a result, we are not persuaded that defendant's 10-year sentence for the predatory criminal sexual assault of a 12-year-old is cruel, unusual, or disproportionate.

¶ 73                                III. Abuse of Discretion

¶ 74    Lastly, defendant claims that the trial court abused its discretion by sentencing him to 10 years instead of to the 6-year minimum, primarily because he was only two months past his seventeenth birthday and the victim was only two months short of her thirteenth birthday.

¶ 75    "A reviewing court gives substantial deference to the trial court's sentencing decision because the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36; *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010). Thus, a sentence within the appropriate sentencing range is usually accorded great deference. *People v. Anaya*, 2017 IL App (1st) 150074, ¶ 102. Although Illinois Supreme Court Rule 615(b) grants a reviewing court the power to reduce a sentence or the degree of an offense, our supreme court has cautioned that this power should be used cautiously and sparingly. *Alexander*, 239 Ill. 2d at 212. As a result, an appellate court "may not alter a defendant's sentence absent an abuse of discretion." *Alexander*, 239 Ill. 2d at 212; see also *Snyder*, 2011 IL 111382, ¶ 36 ("a reviewing court may not modify a defendant's sentence absent an abuse of discretion"). Our supreme court has found that, with respect to a sentence, an abuse of discretion occurs when the sentence is greatly at variance with the spirit or purpose of the law or manifestly disproportionate to the

nature of the offense. *Snyder*, 2011 IL 111382, ¶ 36; *Alexander*, 239 Ill. 2d at 212. A reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed various sentencing factors differently. *Alexander*, 239 Ill. 2d at 213.

¶ 76    When the legislature draws lines with respect to age, there will always be people who are close to the line. Defendant asks us to consider a two-month difference, which is not two days or even two weeks. Since there will always be a defendant close to the legislative line, the statute at issue provided the judiciary with the ability to exercise discretion in fashioning an appropriate sentence within a particular range. 720 ILCS 5/11-1.40(b)(1) (West 2010). The offense provided for "a term of imprisonment of not less than 6 years and not more than 60 years" (720 ILCS 5/11-1.40(b)(1) (West 2010)), thereby providing the court with a 54-year range within which to sentence. In the case at bar, the trial court sentenced defendant to 10 years, which was at the very low end of this range. With respect to defendant and victim's relative maturities, the trial court found that defendant "commit[ted] this Class X felony upon a very unsuspecting 12 year old girl." By contrast, defendant had already fathered two children by the time of the offense.

¶ 77    The arguments that defendant makes on appeal about having an immature 17-year-old brain would apply equally to any 17-year-old, and the statute at issue specifically applies to 17-year-olds. The statue states, in relevant part, that "[a] person commits predatory criminal sexual assault of a child if that person *** is 17 years of age or older." 720 ILCS 5/11-1.40(a) (West 2010). Thus, the legislature made a policy decision to apply this statute to 17-year-olds, and defendant does not argue that this decision is facially invalid.

¶ 78    After defendant's sentencing in 2015, our state legislature passed a law requiring a sentencing court to consider additional factors in mitigation "when a person commits an

offense and the person is under 18 years of age at the time of the commission of the offense." 730 ILCS 5/5-4.5-105(a) (West 2016). Although this statute did not apply on April 9, 2015, when defendant was sentenced, it still sheds light on appropriate factors to consider when fashioning a sentence for a young offender. These factors are:

"(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;

(2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

(4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history; and

(9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate." 730 ILCS 5/5-4.5-105(a) (West 2016).

¶ 79        With respect to the above factors, we already discussed defendant's age. Second, there was no evidence in the record that defendant was subjected to outside pressure in committing this offense. Third, the presentence report states that defendant stated that he had some conflict with his mother as an adolescent but that he was never abused or neglected.

Fourth, the trial court implicitly discussed defendant's potential for rehabilitation while discussing his prior juvenile history. The trial court noted during sentencing that "there was a finding of delinquency for a residential burglary, which is a Class 1 felony." Then in June 2008, there was a violation of probation filed. The trial court observed that "[t]he defendant apparently did not comply further with probation and his juvenile court judge sent him" to IDOC as a juvenile in October 2009. The trial court commented, "So a little less than two years after he was sentenced as a juvenile to the Department of Corrections, he commits this Class X felony." As far as the circumstances of the offense, the trial court observed that defendant preyed "upon a very unsuspecting 12 year old girl who he knew from the neighborhood." As for defendant's degree of participation in the offense, he was not a lookout or ancillary participant, but the one and only participant in the offense. As for his participation in his defense, there was no suggestion that he was unable to meaningfully participate in his own defense. The last or ninth factor includes any "expression of remorse." During his statement to the trial court, defendant stated generally that he had "made some wrong actions" and "made a mistake," and was "[s]orry for what other people have been through." However, he still did not acknowledge specifically what he had done or even acknowledge the victim, referring only to "other people."

¶ 80      Thus, even when we consider these additional factors that were not statutorily mandated at the time of defendant's sentencing, we cannot find an abuse of discretion by the trial court.

¶ 81                                    CONCLUSION

¶ 82      On appeal defendant claimed (1) that his trial counsel was ineffective for failing to move to dismiss the charges against him after the State allegedly failed to bring him to trial

within the period required by the Speedy Trial Act (725 ILCS 5/103-5(a) (West 2012)); (2) that, as applied to defendant, the statutes governing predatory criminal sexual assault, registration, and notification were harsh and violated the cruel and unusual punishment clause of the eighth amendment, as well as the proportionate penalties clause; and (3) that the trial court abused its discretion by sentencing defendant to 10 years.

¶ 83     For the foregoing reasons, we find (1) that trial counsel was not ineffective for not moving to dismiss on speedy-trial grounds when there was no speedy-trial violation, (2) that the statute governing predatory criminal sexual assault was not unconstitutional as applied to defendant, and (3) that the trial court did not abuse its discretion by sentencing defendant to the low end of the permissible sentencing range.

¶ 84     Thus, we do not find defendant's claims persuasive and affirm his conviction and sentence.

¶ 85     Affirmed.